1
2
3                    UNITED STATES DISTRICT COURT
4                   NORTHERN DISTRICT OF CALIFORNIA
5
6  In re WESTERN ASBESTOS COMPANY,
   et al.
7              Debtors.
   _____/
8
9  HON. CHARLES RENFREW (RET.), FUTURES
   REPRESENTATIVE TO THE WESTERN
   ASBESTOS SETTLEMENT TRUST, AND THE
10 TRUST ADVISORY COMMITTEE TO THE
   WESTERN ASBESTOS SETTLEMENT TRUST,
11
12          Plaintiffs/Appellees,
13          and
14 THE WESTERN ASBESTOS SETTLEMENT
   TRUST,
15
            Plaintiff-Intervener/Appellee-      No. C 08-4127 PJH/08-4376 PJH
16          Intervener                          Bankr. Case No.  02-46284
                                                Adv. Case No. 07-4141
17
        v.                                      **ORDER RE: CONSOLIDATED
18                                              APPEALS**
19 HARTFORD ACCIDENT AND INDEMNITY
   COMPANY,
20
            Defendant/Appellant.
21 _____/
22
        Appellant Hartford Accident and Indemnity Company ("Hartford") appeals the
23
   bankruptcy court's August 11, 2008 order in adversary case no. 07-4141 granting
24
   appellees' motion for partial summary judgment and for a permanent injunction and
25
   denying Hartford's motion for judgment on the pleadings and/or for summary judgment.[1]
26
27  _____
28      [1]Four months earlier, on April 11, 2008, the bankruptcy court issued a more
   comprehensive memorandum decision in the adversary case explaining the numerous bases
   for the summary August 11, 2008 order and permanent injunction.  Hartford Appx. 4.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Hartford Appx. 20.  Additionally, Hartford appeals the bankruptcy court's August 21, 2008

2   order in the main chapter 11 bankruptcy case, no. 02-46284, denying as moot Hartford's

3   motion to enforce a settlement agreement and appellees' motion for clarification.  Hartford

4   Appx. 5.  For the reasons that follow, the court AFFIRMS the decisions and judgments of

5   the bankruptcy court.

6                                          **BACKGROUND**

7          On October 21, 2008, this court related the above two bankruptcy appeals because

8   the bankruptcy court's August 11, 2008, and August 21, 2008 orders from which Hartford

9   appealed involved the same issues and parties.  The court also consolidated briefing on

10   appeal.  Subsequently, on February 5, 2009, the court permitted plaintiff-intervener,

11   Western Asbestos Settlement Trust ("the Trust"), to retain on appeal its intervener status,

12   granted by the bankruptcy court, and allowed it to file an opposition brief.  The court also

13   permitted Hartford to reply to the Trust's brief.  Accordingly, there are a total of five briefs

14   on appeal before this court, including Hartford's opening brief, appellees' opposition brief,

15   Hartford's reply brief, the Trust's opposition brief, and Hartford's reply to the Trust's brief.

16   **A.     Factual and Procedural Background**

17          This appeal stems from the bankruptcy court's orders in the main bankruptcy case,

18   In re Western Asbestos Company, 02-46284, and in an adversary case, Hon. Charles

19   Renfrew et al. v. Hartford Accident and Indemnity Company, 07-4141.  In 2002, the

20   debtors, MacArthur Companies and Western Asbestos, filed voluntary petitions for relief

21   under chapter 11 of the Bankruptcy Code for the purpose of establishing an asbestos

22   claimants' trust, the Western Asbestos Settlement Trust ("the Trust"), funded by a

23   settlement with insurance companies with whom the debtors had been in coverage

24   litigation for several years.

25          Such a trust is recognized by Bankruptcy Code § 524(g), which establishes a

26   procedure for dealing with personal injury claims against the debtor based on exposure to

27   asbestos-containing products in chapter 11 reorganization cases.  140 Cong. Rec H 10,765

28

                                                2

(October 1994). The procedure under § 524(g) involves the establishment of a trust to pay the future claims, coupled with an injunction, referred to as a "channeling injunction," which prevents future claimants from suing the debtor. *Id.* The section allows the bankruptcy court to enter the channeling injunction, a sweeping injunction against any entity taking legal action to collect a claim that is to be paid in whole or part by a trust created through a qualifying plan of reorganization. *See* 4 Collier on Bankruptcy § 524.07 (15th ed. rev'd).

In this case, the chapter 11 plan confirmation trial began on November 10, 2003, and continued for more than three weeks. The plan included provision for the appointment of a futures representative to represent the interests of holders of Trust claims to be asserted in the future.[2] The plan also provided for the creation of the Trust Advisory Committee ("TAC"), which represents the interests of current holders of Trust claims. Collectively, the futures representative and the TAC are referred to as the "trust fiduciaries."

At the time of the plan confirmation hearings, Hartford was *not* one of the debtors' insurers that had settled with them. Instead, Hartford continued to dispute coverage of the debtors' liability, and vehemently objected to confirmation of debtors' "pre-packaged" chapter 11 plan. In spite of Hartford's objections, following the lengthy plan confirmation hearing, the bankruptcy court confirmed the debtors' plan and issued a channeling injunction. However, on December 19, 2003, prior to the final hearing before a district court judge on the channeling injunction issued by the bankruptcy court,[3] Hartford and the debtors, the unofficial committee of unsecured creditors, several law firms representing asbestos claimants, and the trust fiduciaries entered into a settlement agreement. *See* Complaint, Doc. 1, 07-4141, Exh. 1.

That settlement agreement resolved disputes related to Hartford's obligation to

---

[2]The Honorable Charles Renfrew, a plaintiff in the underlying adversary proceeding and an appellee before this court, was appointed as the futures representative.

[3]Section 524(g)(2)(A) suggests that district court approval of a channeling injunction issued by a bankruptcy court may be necessary, and the bankruptcy court in this case interpreted the section in that manner.

United States District Court

For the Northern District of California

3

provide coverage under its third-party liability insurance policies issued to the debtors, and

required Hartford to pay $1.15 billion to the Trust.  *Id.* at ¶ 3.1.  On January 20, 2004, the

bankruptcy court approved the settlement agreement, *id.* at 19, and on January 27, 2004,

the court confirmed the second amended chapter 11 plan, thus creating the Trust and

requiring the parties to comply with the settlement agreement.[4]  *See* January 27, 2004

Order at ¶ 46.  The January 27, 2004 order recognized that:

> [T]he Trust shall assume all of the liabilities of each of the Debtors (whether existing at the time of the Trust's creation or arising at any time thereafter) arising from or relating to all Asbestos Related Claims.  The Trust shall use the assets and income of the Trust to pay holders of such Asbestos Related Claims and to perform any and all other Trust duties and obligations as set forth in the Plan and in accordance with the Trust Agreement, in such a way that all holders of similar Asbestos Related Claims are treated in a substantially equivalent manner and to comply in all respects with the requirements for a trust as provided in Bankruptcy Code section 524(g).

¶ 13.

> One of the provisions of the settlement agreement approved by the bankruptcy

court, section 14.1 entitled "Audit Rights," set forth Hartford's right to review and audit the

Trust and Trust payments.  That section provides in pertinent part:

> Hartford shall have the right, at its own expense, upon reasonable notice, at a time and place convenient to the Trust, to review and/or audit the Trust and Trust payments.  The Trust shall have no obligation to create any new documents in connection with any such review beyond those ordinarily created or maintained by the Trust, and Hartford shall not be permitted to challenge the allowance or payment of the Claims by the Trust or any administrative payments or costs of the Trust.

Unlike the settlement agreement,[5] the Trust itself is a Nevada Trust.  It contains a

---

[4]The January 27, 2004 order confirming the second amended joint plan of reorganization provided in pertinent part:

> [T]he Trust is hereby designated as successor to the Debtors and as a representative of the chapter 11 estates, and is authorized as a matter of law to appear in and act on behalf of the Debtors in all pending actions and to pursue all such causes of action for the benefit of the holders of Asbestos Related Claims without any further required action by the Debtors or the Court.

¶ 9.

[5]The agreement itself does not appear to contain a choice of law provision, and the parties have all assumed that California law governs the interpretation of the agreement.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

choice of law provision, specifying that: "This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Nevada without regard to Nevada conflict of laws principles." September 7, 2007 Trust Complaint in Intervention, Exh. B. at § 7.11. However, that same section provides that "the Trust is subject to the continuing jurisdiction of the Bankruptcy Court."[6]

Several years later, on March 6, 2007, Hartford contacted the Trust, stating that it was providing notice, pursuant to the Settlement Agreement, of its intent to "review and audit the Trust and Trust payments." The Trust subsequently requested assurances from Hartford regarding the protection of the privacy rights of present and future Trust claimants. It requested that Hartford execute a confidentiality agreement that provided protection for personal information regarding the Trust claimants, or alternatively, that it acknowledge that a prior stipulated protective order approved by the bankruptcy court on June 13, 2003, applied to the Trust information sought by Hartford. The Trust also sought to clarify the purpose for which Hartford wanted to review the information.

Regarding its purpose, Hartford responded that it "wish[ed] to review the facts alleged by claimants making a claim to the trust." It noted that "[i]n light of recent reports and disclosures in other contexts about alleged inconsistencies or alleged fraud in claimant exposure and/or medical information, [Hartford] wish[ed] to explore this issue ourselves." As for confidentiality, Hartford asserted that it would comply with existing confidentiality requirements in the settlement agreement and with any statutory obligations, but refused to execute a formal confidentiality agreement.

Subsequently, on July 3, 2007, Hartford filed a motion to enforce its audit rights, initiating a contested matter in the main bankruptcy case. Hartford Appx., Exh. 2. Hartford

---

[6]As the Trust recognized in its motion to intervene before the bankruptcy court, the Trustees could ordinarily seek instructions from a Nevada court on their powers and duties in connection with Hartford's audit demand. However, because the bankruptcy court was the supervising court for the Trust, with jurisdiction over the interpretation and enforcement of the settlement agreement, the Trustees conceded that any interpretation issues were properly brought before the bankruptcy court.

**United States District Court**
For the Northern District of California

argued that it was entitled to audit and review Trust documents with no further restrictions regarding the purpose of its review, and that it was not required to agree to further confidentiality requirements beyond those contained in the settlement agreement.

Two days later, the trust fiduciaries filed a motion for clarification, seeking an order that the June 13, 2003 stipulated protective order applied to the information Hartford requested from the Trust.  Hartford Appx., Exh. 1.  Alternatively, the trust fiduciaries requested that the bankruptcy court issue a new protective order protecting the privacy rights of the Trust claimants.  The bankruptcy court heard the motions on August 20, 2007, and following arguments, concluded on the record that the June 13, 2003 stipulated protective order was no longer in effect.  It also held that procedurally, a separate adversary proceeding - as opposed to a contested matter in the main bankruptcy case - was the correct manner in which to proceed.  It took Hartford's enforcement motion under submission, and ordered the parties to participate in a judicially supervised settlement conference.

On August 31, 2007, the trust fiduciaries filed a complaint, initiating an adversary proceeding, 04-7171.  The trust fiduciaries' complaint raised three claims, including one for declaratory relief, one for preliminary injunctive relief, and one for permanent injunctive relief.  In their first claim for declaratory relief, the trust fiduciaries requested the bankruptcy court declare that:

    a.    the personal and medical information required by the [Chapter 11 plan] Confirmation Order to be submitted to the Trust by individuals who have personal injury or wrongful death actions seeking damages allegedly caused by the presence of, or exposure to, asbestos or asbestos containing products used, furnished or sold by Debtors in order to obtain an offer of settlement from the Trust is information that warrants privacy protection and may not be publicly disclosed;

    b.    Hartford's Audit Right is limited to financial information related to payments made by the Trust (i.e., Audit Data) and with the express limitation that Hartford can not challenge the allowance or payment of claims or Trust costs;

    c.    Hartford's Audit Right does not include claimant-specific settlement information, including settlement amounts paid by

1     the Trust;

2     d.     Hartford's use of any Audit Data it is permitted access to
             pursuant to its Audit Right is limited to this Bankruptcy Case;
3            and

4     e.     Hartford is permitted access to Audit Data pursuant to its Audit
             Right, subject to the stipulated protective order.
5

6     Complaint at 17-18.

7          As for claims two and three, which sought preliminary and permanent injunctive

      relief, the trust fiduciaries sought to enjoin Hartford from:
8
9     a.     Seeking non-public personal, medical, and claimant-specific
             settlement information of Trust beneficiaries from the Trust
10           based on a claim that paragraph 14.1 of the Settlement
             Agreement authorizes the release of such information;

11    b.     Using any Audit Data beyond this Bankruptcy Case it is
             permitted access to pursuant to its Audit Right; and
12
13    c.     Disclosing, other than in compliance with the Stipulated
             Protective Order, any Audit Data Hartford is permitted access to
             pursuant to its Audit Right.
14

15    Complaint at 18.

16         Hartford answered and counterclaimed for breach of contract, based on its right to

17    review and audit the Trust.  Subsequently, the Trust, through its trustees, sought to

18    intervene in the adversary proceedings.  In support, it noted that although the Trust itself

      was not a party to the settlement agreement at issue, the agreement and order identified
19
20    the Trust as the party obligated to respond to a request to review and audit.

21         The bankruptcy court granted the Trust's motion to intervene,[7] and the Trust filed its

22    complaint in intervention.  It sought declaratory relief, and, among other things, requested

23    that the bankruptcy court "instruct the Trustees in their powers and duties under the Audit

      Right and how to comply with the audit provision in a way that takes account of the context
24
25    in which the Hartford Settlement Agreement was reached and the Trustees' obligations to

26    the beneficiaries."

27         [7]The bankruptcy court did not specify whether it was granting intervention as of right or
      permissively, even though the Trust requested both.
28

United States District Court

For the Northern District of California

1    After participating in mediation for several months and concluding that settlement

2   was not feasible, Hartford filed a motion for judgment on the pleadings and/or for summary

3   judgment in the adversary case.  Hartford Appx., Exh. 10.  The trust fiduciaries filed a

4   cross-motion for summary judgment.  Hartford Appx., Exh. 11.  Both parties, especially the

5   trust fiduciaries, submitted numerous declarations and exhibits, including expert witness

6   testimony.  The bankruptcy court heard the motions on March 31, 2008.  On April 11, 2008,

7   the bankruptcy court denied Hartford's motion for enforcement in the main case and its

8   motion for summary judgment in the adversary case, and granted the trust fiduciaries'

9   cross-motion for summary judgment as to two of the three claims in the complaint, the

10   claims for declaratory and permanent injunctive relief.  Hartford Appx., Exh. 4.  The court,

11   however, held that the scope of the permanent injunction proposed by plaintiffs was too

12   broad, and ordered them to submit a revised order.  *Id.*

13    On August 12, 2008, the bankruptcy court issued an order and permanent injunction

14   permitting Hartford to conduct its audit, but enjoined Hartford in accordance with restrictions

15   set forth in its April 11, 2008 decision.   Hartford Appx., Exh. 20.  The court also dismissed

16   plaintiffs' claim for preliminary injunctive relief as moot.  *Id.*  Subsequently, on August 21,

17   2008, the bankruptcy court issued an order in the main bankruptcy case denying Hartford's

18   motion to enforce the settlement agreement and the trust fiduciaries' motion for clarification

19   as moot in light of its August 12, 2008 order in the adversary case.  Hartford Appx., Exh. 5.

20    On August 25, 2008, the bankruptcy court entered judgment in the adversary

21   proceeding. The judgment clarified that the court granted in part and denied in part

22   plaintiffs' claims for declaratory and permanent injunctive relief, that the claim for

23   preliminary injunctive relief was dismissed as moot, that Hartford's counterclaim was

24   denied, and that the bankruptcy court would retain jurisdiction to enforce the judgment.

25    Hartford appealed, and elected to have the appeal heard by this court instead of the

26   Ninth Circuit Bankruptcy Appellate Panel.

27   ////

28

8

**United States District Court**
For the Northern District of California

**B.     Parties' Arguments/Evidence before the Bankruptcy Court**

**1.     Motions in Main Bankruptcy Case**

Hartford filed the initial motion, a motion to enforce its rights under the settlement agreement.  In that motion, Hartford argued that in exchange for its $1.15 billion in payments under the settlement agreement, it received a number of rights, including an explicit right to review and audit the Trust and Trust payments.  It argued that it had fulfilled all of its obligations under the settlement agreement, but that the Trust and trust fiduciaries refused to permit it to exercise its audit rights absent its agreement to a number of conditions.  Hartford requested that the bankruptcy court order the trust fiduciaries and the Trust to comply with the terms of the settlement agreement and allow it to review the requested Trust information.

Days later, the trust fiduciaries filed their own motion in the main bankruptcy case, one for clarification regarding the effect of a prior stipulated protective order, or alternatively for the issuance of a protective order covering Trust information requested by Hartford. They noted that on June 13, 2003, prior to confirmation of the chapter 11 plan, the bankruptcy court approved a protective order under which documents containing Trust claimants' personal information were deemed confidential, and requiring the receiving party to maintain the documents in confidence and to use them only for purposes related to the bankruptcy case.  The trust fiduciaries further noted that following Hartford's request for information from the Trust, the Trust requested Hartford to agree to abide by terms of the protective order, but that it refused to do so, stating only that it would abide by statutory protections and those in the settlement agreement.  The trust fiduciaries argued that the stipulated protective order continued to apply to Trust information, and that if it did not, a similar order should be entered protecting the confidential information.  They further contended that Hartford's use of any Trust information should be circumscribed, and that it should not be allowed to use the information to further its own interests in other cases or forums.

9

United States District Court

For the Northern District of California

1    The Trust joined in the trust fiduciaries' motion for clarification.  In its joinder, the

2    Trust acknowledged that Hartford had a right to audit the Trust, and noted that it did not

3    seek to prevent it from exercising that right.  It only opposed Hartford's attempt to exercise

4    that right absent its agreement to protect personal information submitted by Trust

5    claimants.  The Trust thus requested that the bankruptcy court allow it to make Trust

6    information available to Hartford for inspection and audit, but not allow Hartford to copy the

7    information.  It further requested the court to prohibit Hartford from disclosing information

8    obtained during the course of its audit and from using the information for any business or

9    commercial purpose, or in any other litigation or proceeding unless the claimant whose

10   confidential information was concerned consented to such use.

11   As noted above, the bankruptcy court did not decide the motions in the main

12   bankruptcy case until after the motions discussed below were filed and heard in the

13   adversary case.

14        **2.    Motions in the Adversary Case**

15   The issues and arguments in the motions in the adversary case overlapped with the

16   motions described above from the main bankruptcy case.  However, the parties further

17   expanded on the above arguments and submitted numerous declarations and exhibits in

18   conjunction with the summary judgment motions in the adversary case.

19   In its opening motion for judgment on the pleadings and/or for summary judgment,

20   Hartford argued that it was entitled to judgment on the pleadings, and alternatively, if the

21   bankruptcy court chose to rely on facts outside the pleadings, that the facts were

22   undisputed and that it was entitled to summary judgment on the three claims brought by the

23   trust fiduciaries, and on its counterclaim.  It contended that the settlement agreement did

24   not restrict its access to Trust information, and that it was not required to obtain the consent

25   of the Trust or any of the parties to the settlement agreement prior to its audit.

26   As for the trust fiduciaries' claim for declaratory relief, Hartford argued that the relief

27   the plaintiffs sought was inconsistent with the plain language of the settlement agreement,

28

10

United States District Court

For the Northern District of California

and with prior statements made by the trust fiduciaries, and that the settlement agreement was clear and unambiguous.  Hartford further argued that because the settlement agreement was unambiguous, under California law, the bankruptcy court should not consider any extrinsic evidence submitted by the plaintiffs regarding the negotiating history of the agreement.  In support, it noted the existence of an integration clause in the settlement agreement.  Turning to the claims for injunctive relief, Hartford essentially argued that the claims failed for the same reasons that the trust fiduciaries' claim for declaratory relief should fail.  It argued that the trust fiduciaries were unable to demonstrate any harm to Trust claimants because by filing a claim, the claimants made the information public and essentially waived any special privacy or confidentiality interest in the information.

Finally, regarding its counterclaim, Hartford argued that the trust fiduciaries were in breach of the settlement agreement because it had complied with all of its obligations and properly informed the Trust of its intent to audit, but the trust fiduciaries repeatedly denied Hartford access.  Hartford therefore contended that it was entitled to specific performance of the audit provision, which it asserted included the right to copy the documents.

In their own motion for partial summary judgment, the trust fiduciaries sought summary judgment on parts (a),(b), and (d) of their claim for declaratory relief, and permanent injunctive relief in accordance with their third claim.  The trust fiduciaries offered evidence in support of their motion consisting of exemplars filed under seal of the types of confidential information Hartford sought from the Trust, an expert declaration regarding the meaning of the terms "audit and/or review," and declarations regarding the negotiating history of the settlement agreement.

The evidence submitted by the trust fiduciaries in support of their motion included a declaration from Alan Brayton, a partner at Brayton Purcell LLP.  Brayton, along with David McClain, was one of two primary attorneys who negotiated the settlement agreement on behalf of the official unsecured creditors committee.  Brayton also represented numerous

United States District Court
For the Northern District of California

individual plaintiffs in the state court asbestos coverage litigation.  Brayton attested to the settlement history and negotiations, and numerous term sheets were attached to Brayton's declaration.

Brayton explained in his declaration that the settlement negotiations with Hartford commenced with a term sheet.  *See* April 11, 2008 Order at 12; Brayton Decl. ¶ 9.  He stated that the negotiations were the result of approximately ten days of "intense negotiations" with Hartford and its representatives, and that attorney William Bowman was the lead negotiator for Hartford.  *Id.*  Brayton explained that the term sheet was amended twice and then signed.  Order at 12.  In all three of the term sheets, including the final one, Hartford's "review and/or audit" right appeared in the same paragraph as the requirement that the trust fiduciaries use all of the payments made by Hartford either to pay Trust claims or "in connection with" Trust claims.  *Id.*; Brayton Decl. ¶ 13.  However, Brayton noted that the final settlement agreement shifted the location of Hartford's audit/review right, and stated in pertinent part:

> Within several hours after we [the trust fiduciaries] sent Hartford the executed Final Term Sheet, [Hartford] provided a draft settlement agreement.  No negotiations took place between the signing of the Final Term Sheet and the sending of the draft settlement agreement.  In the draft settlement agreement, the review/audit language that had previously been part of paragraph one in the terms sheets was moved to its own section fourteen.  No changes were made in the actual language.  This change in location did not occur as the result of any discussion about the review/audit right.  At no [sic] time did [sic] Hartford state or suggest that changing the location of the Hartford audit rights in the Settlement Agreement as compared to the Final Term Sheet affected the purpose of that provision as solely to ensure that the Hartford payments were used in connection with the Asbestos Related Claims, and not for any other purpose.

Brayton Decl. ¶ 14.

Brayton further attested that:

> In the settlement discussions, Mr. McClain told Hartford's representatives that the plan proponents would not agree that Hartford could use individual claimant submissions to the Trust for purposes other than those connected to the Trust.  Hartford's representatives did not state or suggest in response that Hartford believed the review/audit right it was requesting would allow use of individual claimant submissions for any purposes other than those connected to the trust or for Hartford's own purposes.  Rather, Hartford at all times conveyed to the plan proponents that the sole intended purpose of the review/audit

United States District Court

For the Northern District of California

right was to verify the use of settlement funds as being in connection with Asbestos Related Claims as part of Hartford's submission of claims to its reinsurers.

Brayton Decl. at ¶ 16.[8]

Additionally, the trust fiduciaries already had a declaration on file from David McClain.  McClain, a named partner at the law firm, Kazan, McClain, Abrams, Lyons, Farrise & Greenwood, previously submitted a declaration in the main bankruptcy case in support of the trust fiduciaries' opposition to Hartford's motion to enforce the settlement agreement.  Like Brayton, McClain attested that:

> The Hartford Settlement Agreement did not provide that the *quid pro quo* for an individual to receive compensation for his or her asbestos injury caused by the debtors was the individual granting to Hartford a license to disclose and use that individual's personal information as Hartford pleases, including for purposes beyond this bankruptcy case.  I specifically told Hartford's representative in the settlement negotiations that I would not agree that Hartford could use individual claimant submissions to the trust for purposes other than those connected to the Trust.  I would never have agreed to such a provision on behalf of the Committee.  No representative of Hartford ever suggested during the negotiations for the Hartford Settlement Agreement that the review and audit provision was so intended.  Instead, I believed that a contrary intention, under which any review or audit would respect the confidentiality of claimants' personal information, should be presumed from the fact that all previous disclosures of such information during the course of the bankruptcy case were made pursuant to a stipulated protective order preventing the disclosure of this information or its use for purposes other than in the case.

McClain Decl. at ¶ 14.

In addition to Brayton, another attorney who participated in the settlement negotiations, Jeffrey Rehfield, an attorney at Sheppard, Mullin Richter & Hampton

---

[8]At the March 31, 2008 hearing, the bankruptcy court queried the trust fiduciaries as to why *Brayton's* declaration was submitted as evidence of what McClain had said during the settlement negotiations, and why the recipient of the statement on behalf of Hartford was not named.  *See* April 11, 2008 Order at 11 & n. 6.  The trust fiduciaries explained that at the time they submitted their motion for summary judgment in the adversary case, McClain was outside of the country and unavailable, and noted that in any event, his declaration containing this statement was submitted at an earlier date in the main bankruptcy case.  The court was also advised that Hartford's current attorney, and the attorney representing it at the hearing, was actually the recipient of McClain's statement and that he had not been named in the declaration out of sensitivity to the fact that Bowman was Hartford's lead counsel.  Bowman did not deny the explanation, and the bankruptcy court concluded that "the evidence presented [was] sufficient to establish a prima facie case that the statement was made by McClain to Bowman during settlement negotiations."  *Id.*

13

United States District Court
For the Northern District of California

("Sheppard Mullin"), submitted a declaration.  Sheppard Mullin was counsel for the official

unsecured creditors committee and also for the TAC, which came into existence on the

effective date of the confirmed chapter 11 plan.  Email communications between Sheppard

Mullin and Hartford's counsel, William Bowman, were attached to Rehfield's declaration.

Additionally, the Trust submitted a declaration from an expert on audits conducted

by certified public accountants, Dr. Dan Guy, a former vice president for the American

Institute of Certified Public Accountants ("AICPA").  In support of the trust fiduciaries'

motion, Guy opined that applicable rules prohibited

> an auditor from disclosing any confidential information obtained from the Trust
> without the specific consent of that entity.  The confidentiality rule also
> prohibits a CPA from using to his or her own advantage or disclosing any
> confidential information that comes to the CPA's attention in carrying out an
> audit or a review.

Guy Decl. ¶¶ 18-19.  Regarding confidentiality, Guy further opined:

> In my opinion, if an audit or review of financial or other information was not
> premised on confidentiality, the audit or review process would be thwarted, if
> not rendered impossible.  The audited or reviewed entity simply would not be
> willing to agree to contractual terms requiring an audit or review.  If the
> audited or reviewed entity believed that entity records and documents could
> be used for reasons other than for the purpose of the audit or review -
> perhaps to the detriment of the audited or reviewed entity and to the benefit or
> enrichment of the auditor or the reviewer - audits and reviews would be so
> draconian that they would not be included in agreements or contracts.

The trust fiduciaries also submitted two declarations from Sara Beth Brown, the

executive director of the Trust.  Brown described the process for submitting claims to the

Trust, and attached as an exhibit a copy of the claim form that claimants are required to

utilize.  Brown Decl., Exh. 1.  She attested that in her role as the director, she was familiar

with the type of information that a claimant was required to provide the Trust in order for a

claim to be considered for settlement.  *Id.* at ¶ 6.  She noted the personal and private

nature of much of the information that was submitted.  *Id.* at ¶ 12.  Given the private nature

of the claims, Brown stated that the Trust utilizes "a third-party disclosure policy that sets

forth the procedures pursuant to which the Trust will provide individual claimant information

to a third party."  *Id.* at ¶ 14, Exh. 5.  That policy provides that certain private information

United States District Court

For the Northern District of California

1  will only be made available if the requesting party provides "a subpoena issued by a court

2  with competent jurisdiction over the Western Asbestos Settlement Trust, headquartered in

3  Reno, Nevada." *Id.* Brown also submitted a separate supplemental declaration, which

4  attached examples of the types of detailed narrative medical examination reports received

5  and maintained by the Trust in conjunction with Trust claims.  As noted, the exemplars

6  were submitted under seal and pursuant to a protective order.

7          The trust fiduciaries argued generally that, in accordance with the extrinsic evidence

8  offered, the term "review and/or audit" as used in the settlement agreement was intended to

9  have a special meaning, and that Hartford was precluded from using the Trust information

10  except for the purpose of supporting its claims for reinsurance for payments it made

11  pursuant to the settlement agreement.  Alternatively, even if a customary meaning of

12  "review and/or audit" was employed, the trust fiduciaries argued that Hartford's audit and

13  review rights were nevertheless limited by confidentiality requirements and a prohibition

14  against its use of the information for personal advantage.  In support, they pointed to Guy's

15  expert testimony that AICPA rules prevented Hartford, in its role as an auditor, from

16  disclosing confidential information obtained from the Trust without the consent of individual

17  Trust claimants, and from disclosing such information for its own advantage.

18          The trust fiduciaries also argued that the extrinsic evidence revealed that section

19  14.1 of the settlement agreement limited Hartford's review and/or audit of the Trust

20  information to supporting claims it intended to make to its reinsurers.  They pointed

21  primarily to the negotiating history of the agreement, contained in the Brayton, McClain,

22  and Rehfield declarations, and the exhibits thereto.  Specifically, the trust fiduciaries

23  pointed to written term sheets from the negotiations and statements by Hartford's

24  representatives, in arguing that the parties' intent with respect to Hartford's audit rights was

25  that Hartford be able to "determine for reinsurance purposes whether the Trust had used

26  the Hartford Payments in connection with Asbestos Related Claims, with the express

27  limitation that Hartford could not challenge the allowance or payment of claims or Trust

28

15

United States District Court

For the Northern District of California

1    costs."  The trust fiduciaries asserted that Hartford was advised in the settlement

2    negotiations that they did not agree to Hartford's use of individual claimant submissions to

3    the Trust for purposes other than those connected to the Trust.

4        The trust fiduciaries further argued that the personal information that claimants

5    submit to the Trust was confidential, and that the claimants possessed a legally protected

6    privacy interest in the information.

7        In sum, the trust fiduciaries argued that the bankruptcy court should grant

8    declaratory and injunctive relief preventing Hartford from obtaining access to Trust

9    information unless it was maintained in confidence and used only for purposes related to

10   the Trust.  They argued that injunctive relief was proper given that a violation of the

11   claimants' privacy rights could not be adequately remedied through monetary damages.

12       In their opposition to Hartford's summary judgment motion, the trust fiduciaries

13   argued that Hartford was not entitled to judgment as a matter of law or summary judgment

14   on those claims.  As for Hartford's counterclaim, they argued that, at a minimum, there was

15   a disputed issue of material fact regarding restrictions on Hartford's audit and/or review

16   rights that prevented the bankruptcy court from granting Hartford summary judgment.[9]

17       In opposition to the trust fiduciaries' motion, Hartford generally argued that the trust

18   fiduciaries' extrinsic evidence was insufficient to create a triable issue of fact, let alone

19   entitle them to summary judgment.  It refuted what it asserted were the trust fiduciaries'

20   primary arguments.  First, it argued that Guy's expert opinion did not shed light on the

21   parties' intent with respect to the meaning of the phrase "review and/or audit" because Guy

22   had no firsthand knowledge of the settlement talks.  Second, Hartford argued that the

23   bankruptcy court should not consider the trust fiduciaries' extrinsic evidence, namely the

24   parties' prior term sheets, to discern restrictions on Hartford's audit rights because the

25   phrase "audit and/or review" possessed a plain meaning.  Third, Hartford contended that

26   _____

27       [9]The Trust, as intervener, also submitted a brief in support of the trust fiduciaries' motion
     and in opposition to Hartford's motion.  It contained many of the same arguments described
28   above.

16

1 Trust claims were not confidential and were no different than the materials routinely offered

2 in asbestos cases.

3 　　　　As for Guy's expert opinion, Hartford contended that it was worthless because CPAs

4 like Guy were not utilized in the negotiations underlying the settlement agreement; there

5 was no requirement that a CPA conduct a review or audit under the settlement agreement;

6 and there was no evidence that the parties intended that the review be a *financial* audit.

7 Hartford instead advocated using the plain, ordinary meaning of "review" and "audit," which

8 according to dictionary definitions, it argued entitled it to a "critical and deliberate

9 examination, including a formal investigation of the Trust's claim accounts."

10 　　　　Nevertheless, in the event that the bankruptcy court concluded that a specialized

11 meaning was appropriate, Hartford submitted its own expert, Michael Ceppi's declaration,

12 in which Ceppi attested that an insurance claim-type review and audit - as opposed to a

13 financial audit - was more appropriate.  Ceppi was the president of an independent audit

14 and inspection service, and had more than twenty years conducting audits in the insurance

15 industry.   Ceppi attested in pertinent part that:

16 　　　　Based on my experience in the insurance industry spanning more than two
　　　　decades, I am aware that insurance companies such as Hartford have a wide
17 　　　　range of legitimate motivations and goals for reviewing and auditing the files,
　　　　documents, and information of entities, such as the Trust, which process and
18 　　　　pay personal injury claims, including, by way of example: (1) examining Trust
　　　　operations to learn about current and past claim activity; (2) examining
19 　　　　whether funds paid by the insurer are being used consistent with the parties'
　　　　respective obligations and expectations under an operative insurance policy
20 　　　　and/or settlement; (3) examining the Trust's claims handling activities to
　　　　analyze whether the Trust is properly paying only valid claims, and whether it
21 　　　　has set up mechanisms to ensure that; (4) obtaining information regarding
　　　　claimants that may seek to recover damages from other parties for the same
22 　　　　or similar claims; (5) examining Trust operations to determine whether the
　　　　Trust is operating efficiently and to suggest improvements to ensure that
23 　　　　claims are evaluated properly; (6) obtaining information as needed for the
　　　　insurer's own financial reporting obligations or reporting obligations to other
24 　　　　third parties such as reinsurers; and (7) ensuring that the Trust is using the
　　　　proceeds of the insurer's settlement consistently with the settlement
25 　　　　agreement.  In addition, insurers may have other equally legitimate reasons
　　　　for exercising rights such as the Review and Audit Rights in a variety of
26 　　　　circumstances.

27 Ceppi Decl. ¶ 6.

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1        Hartford did not submit any of its own declarations in response to the trust

2    fiduciaries' evidence regarding the settlement negotiations.  However, on the record at the

3    March 31, 2008 hearing, William Bowman, Hartford's lead counsel in the settlement

4    negotiations, responded to questions posed by the bankruptcy court.  Bowman admitted

5    that he advised Brayton and McClain that Hartford needed the right to review and/or audit

6    the Trust and Trust payments for reinsurance purposes, but denied telling them that was

7    the *sole* purpose for the provision.  April 11, 2008 Order at 13; March 31, 2008 Transcripts

8    at 23-31.  Bowman also admitted that he never told Brayton or McClain that Hartford

9    wanted the right to use the information for purposes unrelated to the Trust.  *Id.*

10   Additionally, Bowman declined to admit or deny McClain's statement that during the

11   negotiations, McClain advised Bowman on behalf of the trust fiduciaries that it would not

12   agree to Hartford's use of the information unrelated to the trust.  *Id.*

13        Turning to confidentiality, Hartford contended that the trust fiduciaries focused on a

14   "small sliver" of hand-picked claimant information.  It argued that even the most sensitive

15   type of information submitted by Trust claimants is similar to records "provided every day in

16   courts and to defendants by claimants."

17        Finally, Hartford argued that even if the trust fiduciaries were entitled to some sort of

18   relief, they were not entitled to permanent injunctive relief.  It noted that it had already

19   reassured the Trust and trust fiduciaries that it would keep Trust claimants' social security

20   numbers, dependant information, and non-asbestos-related medical information

21   confidential.  In light of those assurances, Hartford asserted that the trust fiduciaries could

22   not demonstrate irreparable harm.

23   **C.    Bankruptcy Court Rulings**

24        As noted above, the bankruptcy court decided the trust fiduciaries' motion for

25   clarification, filed in the main bankruptcy case, on August 20, 2007, concluding that the

26   June 13, 2003 stipulated protective order was no longer in effect.  However, the court

27   deferred decision on Hartford's motion for enforcement until the same time that it decided

28

United States District Court

For the Northern District of California

the summary judgment motions in the adversary case.

In its April 11, 2008 order denying Hartford's motion for enforcement and motion for summary judgment and granting the trust fiduciaries' partial motion for summary judgment, the bankruptcy court ultimately concluded that the phrase "review and/or audit" as contained in the settlement agreement was ambiguous.  Considering the extrinsic evidence, the court concluded that "the parties' expressed understanding of the meaning of the phrase gives Hartford the right to obtain copies of any Trust documents to the extent necessary to perform the audit, but does not permit Hartford to use the information obtained through the audit for its own purposes or to disclose that information to third parties."  It thus concluded that Hartford's use of the documents was limited to purposes related to the Trust.

As for the extrinsic evidence, the bankruptcy court found the trust fiduciaries' expert, Guy, more persuasive than Hartford's expert, Ceppi.  It noted that Ceppi did not attest that as an auditor, Hartford would be free to use information obtained during an audit for purposes unrelated to the audit absent the consent of the entity being audited.

The court was also persuaded that the communications surrounding the settlement agreement indicated that the parties understood that the information obtained through the audit could not be used for purposes unrelated to the audit.  It pointed to McClain's declaration, in which McClain stated that he told Hartford's representatives in the settlement negotiations that the trust fiduciaries would not agree that Hartford could use individual claimant submissions to the Trust for purposes other than those connected to the Trust.  It noted that McClain also attested that Hartford's representatives never suggested during the negotiations that they intended that was the case.  The bankruptcy court found that Hartford had presented no evidence to rebut or contradict McClain's declaration.

The bankruptcy court further cited to McClain's declaration and that of Alan Brayton, in finding that there was no evidence that Hartford disagreed with such a limitation on its use of the information.  The court found that under the circumstances, Hartford had a duty

United States District Court

For the Northern District of California

1    to speak up during the negotiations if it disagreed with such limitations on its use of Trust

2    information.[10]  Citing *Golden Eagle Ins. Co. v. Foremost Ins. Co*, the bankruptcy court

3    noted that silence may be treated as acceptance of a term where the circumstances

4    establish a duty to speak.  20 Cal. App. 4th 1372, 1386-87 (Cal. Ct. App. 1993). The

5    bankruptcy court thus concluded that evidence regarding the settlement negotiation

6    communications was sufficient to impose a limitation on Hartford's use of the Trust

7    information.

8        The court further rejected Hartford's argument that the only limitations intended by

9    the parties were those expressly included in the settlement agreement.  It concluded that in

10   spite of the fact that neither was explicit in the agreement, that Hartford was entitled to copy

11   Trust documents, contrary to the trust fiduciaries' position, and also that Hartford was

12   limited in its use of Trust information.  The court ultimately concluded that "the expressed

13   intention of the parties was that Hartford could obtain copies of the Trust documents, if

14   needed to conduct the audit for purposes related to the Trust, but that Hartford could not

15   use the information contained in the Trust documents for unrelated purposes."

16       Turning to confidentiality, the bankruptcy court further agreed with the trust

17   fiduciaries that much of the information contained in Trust claim forms was confidential.  It

18   found one of the primary cases relied on by Hartford, *Volkswagen v. Superior Court*,

19   distinguishable because the allegedly private information in that case was sought by the

20   defendant during discovery and concerned a claim for damages that the plaintiff/claimant

21   had asserted against the defendant.  139 Cal. App. 4th 1481 (Cal. Ct. App. 2006). The

22   bankruptcy court concluded that contrary to *Volkswagen*, the information Hartford sought

23

24       [10]While the bankruptcy court did not explicitly specify the circumstances in its order, it
     alluded to the circumstances on the record at the hearing.  March 31, 2008 Transcripts at 85-
25   90.  The court implied that if it accepted that McClain's statement was made in the course of
     the settlement negotiations, and Hartford simply remained silent, completed the negotiations,
26   and then it was Hartford that ultimately drafted the final settlement agreement, which Hartford
     admitted was the case, that the court would have some difficulty "disregard[ing] . . . the
27   statement and the silence."  *Id.* at 86-87 (noting that something "sit[s] badly about that
     scenario").
28

**United States District Court**
For the Northern District of California

1    had no bearing on a claim for damages being asserted against it, either directly or as the

2    insurer of a third party.

3         The bankruptcy court further rejected Hartford's argument that it needed the

4    confidential Trust information because Hartford was involved in other litigation in which

5    claims were being asserted against Hartford's insureds by the same claimants submitting

6    claims to the Trust, and that it needed to investigate whether the claims in the cases were

7    consistent.  The court noted that Hartford possessed other "more narrowly tailored means

8    to accomplish [its] purpose," including seeking discovery from the claimants in the other

9    bankruptcy cases or even third-party discovery against the Trust regarding the claimants in

10   those cases.

11        Moving on to the trust fiduciaries' request for a permanent injunction, the bankruptcy

12   court concluded that they had satisfied the requirement of a likelihood of success on the

13   merits based on its conclusion that the trust fiduciaries were entitled to partial summary

14   judgment on their claims for declaratory relief.  It also determined that "Hartford's

15   threatened use of the claimant's private information for purposes unrelated to the Trust

16   threatens irreparable injury."  As for the scope of the permanent injunction, the court

17   concluded that the scope of the injunctive relief requested by the trust fiduciaries was too

18   broad.  It construed Hartford's audit rights to include the right to claimant-specific

19   information, and noted that in the past, the trust fiduciaries had been willing to provide

20   Hartford with such information as long as Hartford agreed to a new stipulated protective

21   order.  The court ultimately concluded that the terms of the permanent injunction should

22   mirror the restrictions placed on Hartford's use of the Trust information as set forth in the

23   stipulated protective orders.

24        In sum, the court noted that it was denying Hartford's motion for enforcement filed in

25   the main bankruptcy case, and its summary judgment motion in the adversary case, and

26   that it was granting partial summary judgment in favor of the trust fiduciaries.  As for the

27   permanent injunction, the bankruptcy court ordered the trust fiduciaries to submit a revised

28

21

United States District Court

For the Northern District of California

1  order that complied with its ruling.

2      On August 11, 2008, the court signed the order for a permanent injunction submitted

3  by the trust fiduciaries in conjunction with its April 11, 2008 order.  That injunction contained

4  several provisions regarding confidentiality that were nearly identical to the previous

5  stipulated protective order.  The order provided that the Trust was to make documents

6  available to Hartford not only for inspection, but also for copying.  Significantly, the order

7  also provided that:

> Hartford shall maintain the confidentiality of all Audit Materials and shall not
> disclose, release, share or disseminate any Audit Materials except as
> provided herein.  Audit Materials produced pursuant to this Order shall only
> be used for purposes of this Trust in this bankruptcy proceeding (including
> this Adversary Proceeding) and shall not be used for any other purpose or in
> any other proceeding ("Allowed Purpose") or disclosed to any person not
> authorized by this Order to see Audit Materials.  In the event that any person
> or entity not authorized by this Order to see Audit Materials ("third party")
> seeks access to such materials in the possession of any Party, or other
> person or entity, the Party, person or other entity from which Audit Materials
> are sought shall immediately inform the third party of the existence of this
> Order and notify the Trust of the existence of the request for access to Audit
> Materials.

15  August 11, 2008 Order, ¶ 7.  The order did, however, allow Hartford to share the Trust

16  information obtained during the course of its audit with its reinsurers, but clarified that the

17  same restrictions and obligations applied to the reinsurers as did to Hartford.

18      Finally, the order also provided that

> [e]xcept as provided in paragraph 8(d) below, no later than six months after
> Hartford's receipt of Audit Materials, those materials shall be returned to the
> Trust or destroyed and Hartford shall certify by affidavit to the Trust that all
> copies of the Audit Materials in Hartford's possession, custody, or control
> have been destroyed, provided however that Hartford may advise the Trust
> that it wishes to retain a limited number of documents or excerpts from them
> to memorialize or summarize the audit and review conclusions, in which case
> the Trust and Hartford will seek to reach agreement on such retention and
> may bring any dispute to the Court.

24  *Id.* at ¶ 6.

25                              **ISSUES ON APPEAL**

26      Hartford asserts in its statement of issues that it is raising eight issues on appeal,

27  including:

28

22

United States District Court

For the Northern District of California

(1) Whether the audit provision, section fourteen, of the settlement agreement permitting Hartford "to review and/or audit the Trust and Trust payments" was clear and unambiguous, and should have been interpreted by the bankruptcy court according to its plain language without resort to extrinsic evidence;

(2) whether the Trust should be permitted to rewrite section fourteen four years later to add an entirely new provision, to which Hartford did not agree, requiring Hartford to maintain the confidentiality of the audit materials;

(3) whether the claim materials that a claimant directly puts at issue to prosecute his/her claim against the Trust are confidential under *Volkswagen*;

(4) whether, even if confidentiality were required as to certain of the audit materials, the bankruptcy court erred in failing to recognize, weigh, or even acknowledge Hartford's specific assurances of confidentiality as to certain allegedly sensitive audit materials and its general assurances that it would meet any and all of its legal and statutory confidentiality obligations;

(5) whether the bankruptcy court erred in requiring Hartford to return all audit materials after six months, even though the Trust's motion did not so seek that and the audit provision did not so seek;

(6) whether the bankruptcy court erred in prohibiting Hartford from using audit materials for any purpose not related to the Trust or the bankruptcy case, where the language of the audit provision does not contain such a limitation;

(7) whether the bankruptcy court erred in holding that Hartford had a duty to correct or rebut a single alleged oral statement of alleged unilateral intent made by the trust parties during extensive negotiations of a significant settlement, where those negotiations resulted in a written settlement agreement containing a[n] [sic] integration clause; and

(8) whether the bankruptcy court erred, even if it properly considered extrinsic evidence, in ruling in the trust fiduciaries' favor on summary judgment on what raised at most a disputed factual issue as to the parties' intent and understanding as to an alleged proposal that never became part of the integrated settlement agreement.

However, in its opening brief on appeal, Hartford has condensed the issues down into three "central" issues, including:

(1) Whether the bankruptcy court erred in relying on extrinsic evidence to interpret the settlement agreement, where the settlement agreement was undisputedly clear and unambiguous, where the plain language of the agreement authorizes Hartford to obtain and use the Trust materials for any lawful purpose, where neither the trust fiduciaries nor the bankruptcy court offered any other "reasonably susceptible" reading of the settlement agreement, and where Hartford, not the trust fiduciaries, is properly entitled to judgment as a matter of law;

(2) whether the bankruptcy court further erred in interpreting and applying extrinsic evidence to grant summary judgment in favor of the trust fiduciaries, where the extrinsic evidence failed to create an inference that Hartford agreed to limit its review/audit rights, at most raising a genuine issue of material fact;

23

**United States District Court**

For the Northern District of California

1   and

2   (3) whether the bankruptcy court erred in concluding that Hartford's
    audit/review rights threatened claimants' privacy rights warranting
3   confidentiality restrictions and permanent injunctive relief, where the evidence
    demonstrated that the trust materials are overwhelmingly not confidential,
4   claimants have put their claim-related data at issue by filing a claim, and
    Hartford has repeatedly agreed not to disclose social security numbers,
5   dependent information, and non-asbestos-related medical information.

6                                    **DISCUSSION**

7   **A.    Standards of Review**

8          **1.     Summary Judgment**

9          The granting of summary judgment is reviewed *de novo*, making all reasonable

10  inferences in favor of the non-movant to determine whether there exists any genuine issue

11  of material fact precluding judgment in favor of the movant as a matter of law. *In re Lewis*,

12  97 F.3d 1182, 1185 (9th Cir. 1996). Viewing the evidence in the light most favorable to the

13  nonmoving party, the court must determine whether there are any genuine issues of

14  material fact and whether the bankruptcy court correctly applied the substantive law. *Id.*

15  An appellate court may affirm a summary judgment on any ground that has support in the

16  record, whether or not relied upon by the lower court. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d

17  848, 860 n.17 (9th Cir. 1995); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1043 (9th Cir. 2002).

18         Where the bankruptcy court grants summary judgment on a contract claim, the court

19  reviews the bankruptcy court's interpretation and meaning of contract provisions *de novo*.

20  *See U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 933 (9th Cir. 2002); *DP*

21  *Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 836 (9th Cir. 2001);

22  *Mendler v. Winterland Prod., Ltd.,* 207 F.3d 1119, 1121 (9th Cir. 2000). The determination

23  as to whether contract language is ambiguous and whether the written contract is

24  reasonably susceptible of a proffered meaning, is also a question of law reviewed *de novo*.

25   *U.S. Cellular Inv. Co.*, 281 F.3d at 934.

26         However, when the bankruptcy court uses extrinsic evidence to interpret a contract,

27  the court reviews the findings of fact for clear error and the principles of law applied to

28

                                         24

United States District Court

For the Northern District of California

1  those facts *de novo. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d

2  873, 878 (9th Cir. 2009); *DP Aviation*, 268 F.3d at 836.  The court reviews the bankruptcy

3  court's admission of the extrinsic evidence for abuse of discretion.  *DP Aviation*, 268 F.3d at

4  836; *Lambert v. Ackerley*, 180 F.3d 997, 1009 n. 12 (9th Cir.1999) (en banc).

5       In reviewing the bankruptcy court's findings regarding the extrinsic evidence, the

6  Ninth Circuit has held that "review for clear error is significantly deferential and requires a

7  definite and firm conviction that a mistake has been committed." *Marlyn Nutraceuticals,*

8  571 F.3d at 878.  "[I]f the [bankruptcy] court's findings are plausible in light of the record

9  viewed in its entirety, the appellate court cannot reverse even if it is convinced it would

10  have found differently."  *Id.*  Additionally, the court pays special deference to a trial court's

11  credibility findings.  *Id.*

12       **2.    Permanent Injunctive Relief**

13       Because the bankruptcy court's "decision to grant a permanent injunction involves

14  factual, legal, and discretionary components," the appellate court "evaluate[s] such a

15  decision under three different standards of review."[11]  *Walters v. Reno*, 145 F.3d 1032,

16  1047 (9th Cir. 1998); *see also In re Dunbar*, 235 B.R. 465, 470 (9th Cir. BAP 1999) (citing

17  *Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1388 (9th Cir. 1986)).  First, it

18  reviews the bankruptcy court's legal conclusions *de novo.  Id.*  Second, it reviews any

19  factual findings supporting the decision to grant the injunction for clear error.  *Id.*  Finally, it

20  reviews the scope of the injunction for abuse of discretion.  *Id.*  However, the district court

21  may not rely on factual findings made incident to the issuance of a permanent injunction

22  when deciding a motion for summary judgment.  *Id.* (citing Fed.R.Civ.P. 52(a) (stating that

23  _____

24       [11]A plaintiff seeking a permanent injunction must satisfy a four-factor test before a
court may grant such relief, and is required to show: (1) that it has suffered an irreparable

25  injury; (2) that remedies available at law, such as monetary damages, are inadequate to
compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

26  and defendant, a remedy in equity is warranted; and (4) that the public interest would not be
disserved by a permanent injunction.  *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006);

27  *Geertson Seed Farms v. Johanns,* 570 F.3d 1130, 1136 (9th Cir. 2009).

28

United States District Court

For the Northern District of California

findings of fact are unnecessary on decisions of motions under Rule 56)); *see also Rand v. Rowland*, 154 F.3d 952, 957 n. 4 (9th Cir. 1998) (stating that "[a] district court does not, of course, make 'findings of fact' in ruling on a summary judgment motion"); *Bothke v. Fluor Eng'rs & Constructors, Inc.*, 834 F.2d 804, 810 (9th Cir. 1987) (stating that the "district court was not entitled to make findings of fact" at summary judgment and holding, therefore, that a prior panel in the same case "erred in applying the 'clearly erroneous' test of Fed.R.Civ.P. 52(a)").

Under the abuse of discretion standard, the reviewing court must have a firm conviction that the court below committed a clear error of judgment in the conclusion it reached before reversal is proper. *AT&T Universal Card Servs. v. Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998). An error of law is per se an abuse of discretion. *See In re Sternberg*, 85 F.3d 1400, 1405 (9th Cir.1996), *overruled on other grounds by In re Bammer*, 131 F.3d 788 (9th Cir.1997) (en banc). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Review under the "clearly erroneous" standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000).

**B.      Hartford's Appeal**

**        1.      Trust/Intervener Role on Appeal**

In its brief on appeal, the Trust notes that it is in a unique position because it was created after the settlement agreement was executed, and thus was not a party to the settlement agreement. It, however, was nevertheless recognized in the agreement since it is the Trust upon its subsequent creation that received and maintained the claimant information at issue here.

United States District Court

For the Northern District of California

1    In terms of legal arguments, the Trust has, for the most part, joined in the trust

2    fiduciaries' arguments.  The court has included any supplemental arguments and/or

3    authority added by the Trust to its discussion of the parties' arguments below.  Additionally,

4    as noted, the court permitted Hartford to file a separate, additional reply to the Trust's

5    joinder brief.  To the extent that Hartford made any new or supplemental arguments in that

6    reply brief, the court has similarly included those in its discussion of the parties' arguments

7    below.

8            **2.      Consideration of Extrinsic Evidence**

9            Hartford argues that the bankruptcy court erred in considering extrinsic evidence

10   because the settlement agreement was clear on its face.  It suggests that any ambiguity

11   was not in the language of the agreement itself, but instead was *created* by the extrinsic

12   evidence.  It further argues that the language of the settlement agreement was not

13   "reasonably susceptible" to the interpretation adopted by the bankruptcy court.

14           Based on non-controlling cases and dictionary definitions, Hartford then argues that

15   the "usual and ordinary" meaning of the phrase "audit and/or review" includes a thorough

16   investigation and a comprehensive right to copy and retain the records and to use them for

17   any lawful purpose.  Even though the bankruptcy court concluded that "common sense"

18   dictated that Hartford had a right to copy the materials, Hartford argues that its process for

19   reaching such a conclusion was flawed.  Hartford implies that resort to "common sense"

20   was unnecessary because the "intrinsic breadth" of the terms was evident from their plain

21   meaning.

22           As for restrictions on its use of the information, Hartford reiterates the argument it

23   made before the bankruptcy court.  It contends that the only limitations on its use were the

24   express restrictions in the agreement itself.  It points again to the integration clause, and

25   argues that had the parties intended to limit Hartford's use any further, those limitations

26   would have been contained in the agreement itself.

27           In response, the trust fiduciaries contend that Hartford is wrong in its assertion that

28

United States District Court

For the Northern District of California

consideration of extrinsic evidence to ascertain the parties' intent is appropriate only when the contract is shown to be ambiguous based on the contractual language itself.  Instead, they argue that a court "does not decide whether to consider extrinsic evidence based on the facial ambiguity of the contract, but rather on whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37-40 (Cal. 1968).

The trust fiduciaries challenge Hartford's assertion that the bankruptcy court "launched its inquiry on the wrong foot" in considering the extrinsic evidence.  They note that California law actually provides that it is "reversible error for a trial court to refuse to consider [] extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous." *Circle Star Center Assoc. v. Liberate Tech.*, 147 Cal. App. 4th 1203, 1211 (Cal. Ct. App. 2007); *see also Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. Ct. App. 1998).

The trust fiduciaries argue that under California law, the court should follow a two-step process of contract interpretation.  *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1357 (Cal. Ct. App. 2004).  First, they argue that the court should consider the extrinsic evidence to determine whether the contract term is susceptible of the interpretation offered.  *Id.* at 1356-59.  If it is, then second, they assert the court construes the contract using the extrinsic evidence.  *Id.*  The trust fiduciaries also contend that the court may consider expert testimony regarding how words are usually understood by persons in the profession or business to which the agreement and/or terms relate.  *Id.* at 1357.  They further argue that even when a contract is integrated, the meaning of the terms of the contract must still be ascertained.  *Morey*, 64 Cal. App. 4th at 913.

In its joinder brief, the Trust adds that Hartford's proffered dictionary definitions for "review" and "audit" are not supported by the language of the settlement agreement or by the terms' alleged plain meaning.  It contends that the maintenance of documents in

United States District Court

For the Northern District of California

1  perpetuity and the use of documents outside the context of the Trust is not intrinsic in either

2  term.  It further notes that Hartford itself recognized that the right to audit constitutes the

3  right "to examine, verify or correct the financial accounts of an *organization*."  The Trust

4  notes that *it* is the organization - not the individual Trust claimants.

5       The Trust also argues that Hartford's interpretation of "review and/or audit" renders

6  worthless the additional language permitting Hartford to conduct the review or audit at "a

7  time and place convenient to the Trust."  It contends that Hartford's position that it has the

8  unfettered right to copy Trust information for dissemination and use the information as it

9  pleases cannot be reconciled with the fact that the settlement agreement provided the Trust

10 with control over the time and place for the review or audit.  It argues that if the audit

11 provision simply required the Trust to do as Hartford contends, there would be no need for

12 any such limitation on the place or the timing of the audit.

13      In reply, Hartford argues that this is a textbook case for why a court should not

14 consider extrinsic evidence when that evidence is offered to add restrictions that are not

15 contained within the agreement itself.   It refutes the trust fiduciaries' arguments regarding

16 California law on the issue of the admissibility of extrinsic evidence, asserting that where

17 the language of a contract is "plain," extrinsic evidence is *not* admissible to explain a

18 "latent" ambiguity.  Hartford contends that courts may not, as it asserts the bankruptcy court

19 did here, admit extrinsic evidence to give the provision a meaning at odds with its plain

20 language or to add new terms to an agreement.  At most, Hartford asserts the bankruptcy

21 court was permitted to "provisionally" consider the extrinsic evidence to determine whether

22 the language in the settlement agreement was "reasonably susceptible" to the

23 interpretation proffered by the trust fiduciaries.  However, it contends that was not the case.

24                                    *Analysis*

25      As noted above, the court reviews the bankruptcy court's determination as to

26 whether contract language is ambiguous and whether the written contract is reasonably

27 susceptible of a proffered meaning *de novo.  U.S. Cellular*, 281 F.3d at 934.

28

                                        29

United States District Court

For the Northern District of California

1    The goal of contract interpretation is to give effect to the mutual intent of the parties

2    at the time of contracting.  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (Cal.

3    1992).  In interpreting contracts, the primary search is for a common meaning of the

4    parties; the object of interpretation in the general law of contracts is to carry out the

5    understanding of the parties rather than to impose obligations on them contrary to their

6    understanding.  Rest.2d, Contracts, comment c; *see also* 1 Witkin, Summary, Contracts §

7    741.  The mutual intention to which the courts give effect is determined by objective

8    manifestations of the parties' intent, including the words used in the agreement, as well as

9    extrinsic evidence of such objective matters as the surrounding circumstances under which

10   the parties negotiated or entered into the contract; the object, nature and subject matter of

11   the contract; and the subsequent conduct of the parties.  *Hernandez v. Badger Constr.*

12   *Equip. Co.*, 28 Cal. App. 4th 1791, 1814 (Cal. Ct. App. 1994).

13   Under traditional contract principles, extrinsic evidence is inadmissible to interpret,

14   vary, or add to the terms of an unambiguous integrated written contract instrument.  *See,*

15   *e.g.*, 4. S. Williston, A Treatise on the Law of Contracts § 631; *see also* E. Allen

16   Farnsworth, Contracts, § 7.3 (quoting Williston: "It is generally held that the contract must

17   appear on its face to be incomplete in order to permit parol evidence of additional terms.").

18   California, however, does not follow the traditional rule; *Trident Ctr. v. Conn. Gen. Life Ins.*

19   *Co.*, 847 F.2d 564, 568-69 (9th Cir. 1988) (noting that under California law, "it matters not

20   how clearly a contract is written, nor how completely it is integrated, nor how carefully it is

21   negotiated, nor how squarely it addresses the issue before the court: the contract cannot

22   be rendered impervious to attack by parol evidence. If one side is willing to claim that the

23   parties intended one thing but the agreement provides for another, the court must consider

24   extrinsic evidence of possible ambiguity").

25   In *Pacific Gas*, the California Supreme Court established rules governing the use of

26   parol evidence to determine the meaning of contractual language where the contract

27   appears clear and unambiguous and is "integrated."  69 Cal. 2d at 33.  Under *Pacific Gas*,

28

United States District Court

For the Northern District of California

1    "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written

2    instrument is not whether [the instrument] appears to the court to be plain and

3    unambiguous on its face, but whether the offered evidence is relevant to prove a meaning

4    to which the language of the instrument is reasonably susceptible."  69 Cal. 2d at 37;

5    *accord Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (Cal. 2006).  A contractual

6    ambiguity arises when the contract's language is reasonably susceptible of more than one

7    application to material facts.  *See Dore*, 39 Cal. 4th at 391.  The court's decision in *Pacific*

8    *Gas* makes clear, though, that "extrinsic evidence is not admissible to add to, detract from,

9    or vary the terms of a written [integrated] contract," but only to interpret the terms in the

10   contract.  69 Cal. 2d at 39; *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 777

11   (9th Cir. 2003).

12        Where the meaning of the words used in a contract is disputed, the trial court must

13   provisionally receive any proffered extrinsic evidence that is relevant to show whether the

14   contract is reasonably susceptible of a particular meaning.  *Pacific Gas*, 69 Cal. 2d at

15   39-40.  Even if a contract appears unambiguous on its face, a latent ambiguity may be

16   exposed by extrinsic evidence which reveals more than one possible meaning to which the

17   language of the contract is yet reasonably susceptible.  *Id.* at 40 & fn. 8.  The fact that the

18   terms of an instrument appear clear to a judge does not preclude the possibility that the

19   parties chose the language of the instrument to express different terms.  *Id.* at 37-40.

20   Accordingly, rational interpretation requires at least a preliminary consideration of all

21   credible evidence offered to prove the intention of the parties.  *Id.*

22        The court concludes that the bankruptcy court did not err in considering the extrinsic

23   evidence in this case.  It finds that the language of the audit/review provision is reasonably

24   susceptible to the meaning urged by the trust fiduciaries, such that the bankruptcy court

25   was not only permitted, but required, to consider the extrinsic evidence.  Hartford's

26   characterization of California law is incorrect.  As noted, the California Supreme Court has

27   rejected the traditional approach regarding the consideration of parol evidence, so it was

28

31

United States District Court

For the Northern District of California

1    unnecessary that the bankruptcy court conclude that the settlement agreement was

2    ambiguous prior to considering the extrinsic evidence.  However, even if the court were to

3    consider whether the agreement was ambiguous on its face, contrary to Hartford's

4    argument otherwise, it finds that there is no plain meaning contained within the agreement

5    itself regarding the purpose for and limitations on Hartford's audit/review rights, and also

6    regarding Hartford's "copying" rights, and therefore that, in addition to being reasonably

7    susceptible to the trust fiduciaries' interpretation, the agreement is ambiguous.

8           Having concluded that is the case, the court turns now to the bankruptcy court's

9    interpretation of the extrinsic evidence.

10          **3.    Extrinsic Evidence regarding Settlement Negotiations**

11                 **a.    Hearsay Objection**

12          Preliminarily, the court notes that in its briefing before this court, Hartford has lodged

13   an evidentiary objection to declarations submitted by the trust fiduciaries in support of their

14   motion for summary judgment.  The arguments it makes here were not well-developed in

15   the bankruptcy court.

16          Although Hartford's papers before this court imply that it raised all of the evidentiary

17   issues before the bankruptcy court, that is not the case.  Instead, in tiny font in one of

18   numerous footnotes in its brief in opposition to the trust fiduciaries' summary judgment

19   motion, Hartford simply asserted that a statement in Brayton's declaration constituted

20   "textbook hearsay" and was inadmissible under Federal Rule of Evidence 801.  Adv. No.

21   45, at 15 n. 13.  In their reply brief before the bankruptcy court, the trust fiduciaries

22   responded that they offered Brayton's declaration, which contained statements made by

23   McClain and Hartford during negotiations, not for the truth of the matters asserted, but for

24   the fact that the statements were made as part of the contract negotiations.  Adv. 60, at 10.

25   That was the extent of the argument below.

26          The bankruptcy court did not explicitly rule on this hearsay objection.  However, as

27   noted above, at the March 31, 2008 hearing, the bankruptcy court queried the trust

28

United States District Court

For the Northern District of California

1    fiduciaries as to why *Brayton's* declaration was submitted as evidence of what *McClain* had

2    said during the settlement negotiations, and why the recipient of the statement on behalf of

3    Hartford was not named.  *See* April 11, 2008 Order at 11 & n. 6.  The trust fiduciaries

4    explained that at the time they submitted their motion for summary judgment in the

5    adversary case, McClain was out of the country and unavailable, and noted that in any

6    event, his own declaration containing the same statement was submitted at an earlier date

7    in the main bankruptcy case.  The bankruptcy court was also advised that Hartford's

8    current attorney, William Bowman, who was also the attorney representing it at the March

9    31, 2008 hearing, was actually the recipient of McClain's statement and that Bowman had

10   not been named in the declaration out of sensitivity to the fact that he remained Hartford's

11   lead counsel.  Bowman did not deny this fact, and, in its April 11, 2008 order, the

12   bankruptcy court concluded that "the evidence presented [was] sufficient to establish a

13   prima facie case that the statement [contained in Brayton's declaration] was made by

14   McClain to Bowman during settlement negotiations."  *Id.*

15         On appeal, Hartford has now raised the issue in much greater detail than it did

16   before the bankruptcy court.  It argues that the bankruptcy court inappropriately considered

17   (and credited) not only Brayton's declaration - but also McClain's declaration, when it

18   should have excluded the declarations as inadmissible hearsay.  Hartford argues that the

19   declarations were utilized in a manner in violation of the hearsay rules, and that the

20   statements in the declarations were accepted by the bankruptcy court to prove that the

21   parties intended for Hartford's audit and review rights to be limited in purpose.

22         In response, the trust fiduciaries assert that they offered the declarations to

23   demonstrate what occurred during the settlement negotiations and what the parties

24   intended by the language used in the agreement.  They argue that the evidence is

25   nevertheless also admissible under Federal Rule of Evidence 801(d)(2) because it, at least

26   in part, constitutes Hartford's own statements, the admissions of a party-opponent.

27   Additionally, citing to the California Code instead of the Federal Rules of Evidence, which

28

United States District Court

For the Northern District of California

1   are applicable in this case and were applicable in the proceedings before the bankruptcy

2   court, the trust fiduciaries also argue that statements made by McClain were offered not for

3   the truth of the matter asserted, but simply to establish that the statements were made and

4   to establish the scope of the settlement agreement.  Again, they cite to California law and

5   further argue that the declarations were admissible because they reflect Hartford's

6   knowledge of the trust fiduciaries' intent in entering into the settlement agreement.

7          In reply, Hartford implies that regardless of the purpose for which Brayton's and

8   McClain's statements were proffered, the bankruptcy court utilized the statements as direct

9   evidence of the trust fiduciaries' intent, a use that constitutes "textbook hearsay."  It further

10  argues that even if the statements were offered to show the scope of the settlement

11  agreement, the circumstances surrounding the negotiations, and the issues addressed

12  during negotiations, that the statements were unnecessary because the scope and

13  circumstances were clear from the settlement agreement itself.

14                                         *Analysis*

15         The court reviews the bankruptcy court's admission of the challenged statements for

16  an abuse of discretion.  *DP Aviation*, 268 F.3d at 836; *Lambert*, 180 F.3d at 1009 n. 12; *see*

17  *also Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002) (evidentiary rulings made in

18  context of summary judgment are reviewed for an abuse of discretion).  The bankruptcy

19  court did not rule explicitly on Hartford's hearsay objection, most likely because the issue

20  was inadequately raised by Hartford.  As noted, Hartford did not object in the bankruptcy

21  court on hearsay grounds to McClain's declaration.  Instead, the specific language that

22  Hartford challenged included Brayton's statement in his declaration that

23         [i]n the settlement discussions, Mr. McClain told Hartford's representatives
           that the plan proponents would not agree that Hartford could use individual
24         claimant submissions to the Trust for purposes other than those connected to
           the Trust.  Hartford's representatives did not state or suggest in response that
25         Hartford believed the review/audit right it was requesting would allow use of
           individual claimant submissions for any purposes other than those connected
26         to the trust or for Hartford's own purposes.

27  Brayton Decl. ¶ 16.

28

United States District Court

For the Northern District of California

1    It appears to the court that the above statements were indeed being offered by the

2   trust fiduciaries both for the truth of the matter - to demonstrate that McClain in fact advised

3   Hartford of its opposition to use of Trust information for purposes not related to the Trust -

4   and also *not* necessarily for the truth of the matter, but instead to demonstrate that there

5   were indeed conversations during the course of the settlement conversations regarding

6   limitations on Hartford's use of Trust information.  It further appears to the court that the

7   bankruptcy court relied on the evidence for both purposes.  Because only the former

8   purpose would need to satisfy a hearsay exception, this court is concerned with that one

9   only.

10   Although the bankruptcy court did not explicitly rule on Hartford's hearsay objection,

11   its April 11, 2008 order demonstrates that it clearly recognized the potential hearsay

12   implications associated with the challenged statements in Brayton's declaration.  First, to

13   the extent that Brayton's declaration provided *McClain's* out-of-court statement, the

14   bankruptcy court essentially found that: (1) the statement was duplicative of a statement

15   contained in McClain's own declaration for which such hearsay concerns did not appear to

16   exist; and (2) that, even if such hearsay concerns existed with respect to the statement as

17   contained in McClain's own declaration, the statement possessed sufficient "guarantees of

18   trustworthiness" such that it would satisfy the residual hearsay exception of Rule 807.  *See*

19   April 11, 2008 Order at 11 & n. 6 (noting that "the evidence presented [was] sufficient to

20   establish a prima facie case that the statement was made by McClain to Bowman during

21   settlement negotiations").  This court thus finds that the bankruptcy court did not abuse its

22   discretion in admitting McClain's statement.

23   Second, regarding Brayton's assertion that *Hartford's* representatives failed to

24   respond to McClain's statement, the court finds that to the extent that Hartford's statement,

25   or lack thereof, could constitute hearsay, it was admissible under Rule 801(d)(2) as an

26   admission of a party-opponent, and the bankruptcy court therefore did not abuse its

27   discretion in admitting the statement regarding Hartford's response.

28

35

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**b.    Interpretation of Agreement and Settlement Negotiations Evidence**

Hartford argues that even if it was proper for the bankruptcy court to consider the extrinsic evidence, the court interpreted the evidence improperly and that Hartford was actually entitled to judgment as a matter of law.  It argues that the bankruptcy court erroneously accepted the extrinsic evidence of only one side of the negotiations - that of the trust fiduciaries.  Hartford contends that there is no evidence of mutual intent, but simply evidence of unilateral statements of intent.

Hartford further argues that the bankruptcy court erred in concluding that based on McClain's and Brayton's statements, the trust fiduciaries did not agree to Hartford's use of the information for purposes unrelated to the case.  It also disputes the bankruptcy court's determination that Hartford had some sort of duty to rebut or "correct" the trust fiduciaries' unilateral statement of intent.  Hartford asserts that silence or inaction in the face of an offer does not constitute acceptance.  *Sorg v. Fred Weisz & Assocs.*, 14 Cal. App. 3d 78, 81 (Cal. Ct. App. 1970).  It argues that the case relied on by the bankruptcy court for this duty*, Golden Eagle*, is distinguishable from this case because in *Golden Eagle*, the parties had a pre-existing contractual relationship in addition to actual acceptance.  20 Cal. App. 4th at 1389-90.  Hartford contends that, in this case, it never agreed to or accepted the proposed limitation on its audit or review rights.  Moreover, Hartford argues that it actually rejected the proposed limitation as evidenced by the fact that such limitation is *not* included in the settlement agreement.[12]

The trust fiduciaries respond that the bankruptcy court correctly interpreted the evidence and the settlement agreement, citing to a number of factors.  They first note that at the time of the negotiations, the June 13, 2003 stipulated protective order governed disclosure of Trust claim information.  They assert that the existence of the protective order

---

[12]The court notes that this argument is contrary to Hartford's counsel, Bowman's statements on the record before the bankruptcy court at the March 31, 2008 hearing, and also to the findings of the bankruptcy court.

United States District Court

For the Northern District of California

1    sheds light on the status quo prior to and at the time of the settlement negotiations.  They

2    note that the parties negotiated the settlement agreement against a backdrop of existing

3    restrictions on the use of the Trust information.  *See* Cal. Civ. Code § 1647; *City of*

4    *Atascadero v. Merrill Lynch et al.*, 68 Cal. App. 4th 445, 474 (Cal. Ct. App. 1998).

5        Additionally, the trust fiduciaries argue that the fact that, in the settlement

6    agreement, Hartford's audit rights are contained in a section separate from its payment

7    obligations does not mean that the parties intended to extend Hartford's audit rights to

8    purposes beyond those of the agreement.  They point out that in each of the term sheets

9    exchanged by the parties in their negotiations, Hartford's right to audit and review was in

10   the same section as the limitation on the trust fiduciaries' use of the settlement proceeds.

11   The trust fiduciaries therefore assert that Hartford's audit right was tied to the reciprocal

12   requirement that the trust fiduciaries utilize Hartford's settlement payments solely in

13   connection with asbestos-related claims.  Accordingly, the trust fiduciaries assert that

14   Hartford's reciprocal right to audit is similarly restricted to Trust purposes only (including for

15   purposes of obtaining reinsurance).  The trust fiduciaries argue that although the final

16   settlement agreement moved Hartford's audit right to a separate section, this did not affect

17   the sole purpose of the audit provision, which was to permit Hartford to ensure that its

18   payments under the agreement were used in connection with the asbestos-related claims,

19   and for no other purpose.

20       The trust fiduciaries also argue that the absence of language that explicitly *permits*

21   Hartford to use Trust information for any purpose is more significant than the absence of an

22   express *limitation* on Hartford's use of the information.  They argue that there is no

23   evidence that Hartford bargained to acquire a right to audit the Trust information for any

24   purpose.  Rather, according to the trust fiduciaries, the parties "negotiated for Hartford's

25   payment to the Trust to resolve litigation and the dismissal of [Hartford's] objections to the

26   [chapter 11] plan of reorganization in return for a buy-back of the Hartford insurance

27   policies and a release of claims under those policies."  They assert that with the audit

28

provision, Hartford sought to "preserve its rights to reinsurance for the sums it was paying into the Trust and the negotiators accommodated that desire with a limitation on the use of the settlement payments and a review/audit right."

Finally, the trust fiduciaries challenge Hartford's assertion that the extrinsic evidence demonstrates only "unilateral" intent.  Instead, they argue that the undisputed evidence regarding the negotiating history of the agreement demonstrates that the parties possessed a common understanding of Hartford's right to review/audit the trust.

In reply, Hartford contends that its statement during contract negotiations that it needed the audit right for reinsurance purposes suggests only that that was *one* purpose in obtaining its rights, but not that it was its *only* purpose.  Hartford also argues that given the existence of the integration clause in the final settlement agreement, the "contextual" considerations regarding the settlement negotiations do not require the conclusion that the parties mutually agreed to a settlement that limited Hartford's audit rights in the manner adjudged by the bankruptcy court.  It further contends that if the parties had intended for the non-disclosure provisions of the protective order in effect at the time of the negotiations to apply to its rights under the settlement agreement, the parties would have incorporated or referred to the protective order in the settlement agreement.

*Analysis*

As noted above, when the bankruptcy court uses extrinsic evidence to interpret a contract, the court reviews the findings of fact for clear error and the principles of law applied to those facts *de novo.  Marlyn Nutraceuticals,* 571 F.3d at 878; *DP Aviation*, 268 F.3d at 836.

The court concludes that the bankruptcy court did not err in finding that the communications surrounding the settlement agreement indicated that the parties understood that any Trust information that Hartford obtained through the audit could not be used for purposes unrelated to the Trust.  Hartford's argument that the bankruptcy court relied on evidence of unilateral intent - as opposed to mutual intent - overlooks an important

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   fact.  Hartford failed to offer any evidence to refute the evidence submitted by the trust

2   fiduciaries that during settlement negotiations, Hartford was advised that any review/audit

3   rights granted by the trust fiduciaries would be limited to the purposes of the Trust.

4   Hartford made the tactical decision not to offer any extrinsic evidence creating a triable

5   issue of fact regarding what occurred during the settlement negotiations, but instead chose

6   to rely on its arguments that the bankruptcy court should not consider the trust fiduciaries'

7   extrinsic evidence, and also that the trust fiduciaries' evidence regarding McClain's

8   statement was irrelevant because Hartford never affirmatively agreed to any such limitation.

9   *See* April 11, 2008 Order at 13.

10      Under Rule 56(e), an adverse party to a motion for summary judgment must allege

11   specific facts supported by an affidavit that raise genuine issues for trial.  *Brinson v. Linda*

12   *Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).  It was not sufficient for Hartford to

13   simply argue that the trust fiduciaries' evidence should be disregarded as irrelevant or self-

14   serving.  *See National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.

15   1983); *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).  In

16   other words, Hartford's failure to submit extrinsic evidence regarding the mutual intent of

17   the parties does not transform the trust fiduciaries' evidence into mere evidence of

18   "unilateral intent."

19      Hartford also failed to refute extrinsic evidence submitted by the trust fiduciaries that

20   at the time of the settlement negotiations, it did not respond to or reject a limitation on its

21   use of the Trust information.  In light of the circumstances, Hartford had a duty to speak up

22   and object to the limitation.  "As a general rule, silence or inaction does not constitute

23   acceptance of an offer."  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir.

24   2002) (citing *Golden Eagle*, 20 Cal. App. 4th at 1372).  However, "where circumstances or

25   the previous course of dealing between the parties places the offeree under a duty to act or

26   be bound, his silence or inactivity will constitute his assent."  *Id.* (citing *Beatty Safway*

27   *Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650 (Cal. Ct. App. 1960)); *see also Golden*

28

United States District Court

For the Northern District of California

1   *Eagle*, 20 Cal. App. 4th at 1387 ("silence or inaction operates as an acceptance 'where the

2   offeror has stated or given the offeree reason to understand that assent may be manifested

3   by silence or inaction'") (citing Restatement of Contracts (Second) § 69(1)(b)); *but see*

4   *Sorg*, 14 Cal. App. 3d at 81 ("[t]he tactic of attempting to create a contract by a letter stating

5   a price, on the theory that silence and inaction would constitute an acceptance, has been

6   consistently rejected by the courts").

7         Here, given the length and intensity of the settlement negotiations, the fact that the

8   parties did indeed have a course of dealing throughout the bankruptcy case, and the

9   undisputed evidence that the parties were concerned with the connection between

10  Hartford's payments and the Trust's purposes, evidenced in part by a limitation on the trust

11  fiduciaries' use of Hartford's payments under the agreement, the court concludes that to the

12  extent that Hartford objected to a reciprocal limitation on its audit and review rights, it was,

13  under the circumstances, obligated to speak up.  Hartford indisputably failed to do so.

14  Accordingly, under California law, Hartford's silence may be viewed as assent to the

15  limitation on its use of Trust information.

16        This court's conclusion that the parties understood that any Trust information that

17  Hartford obtained through the audit could not be used for purposes unrelated to the Trust is

18  further supported by the agreement itself and by the context of the negotiations.  Even

19  though the bankruptcy court determined that the June 13, 2003 stipulated protective order

20  was no longer in effect at the time Hartford attempted to exercise its audit rights under the

21  agreement in 2007, *at the time that the parties were negotiating the settlement agreement*

22  *in December 2003, that stipulated protective order was in effect.*[13]

23        That protective order designated Trust-related information "confidential" and "highly

24  confidential" and placed restrictions on the use of such information.  Specifically, the order

25  _____

26        [13]On August 20, 2007, the bankruptcy court ruled on the record that the stipulated
    protective order was only in effect until the settlement agreement became effective.  The

27  settlement agreement did not become effective until the bankruptcy court confirmed the
    chapter 11 plan on January 27, 2004.  Accordingly, the stipulated protective order remained

28  in effect at the time the parties conducted their settlement agreement negotiations.

40

United States District Court

For the Northern District of California

1   provided that:

2       All Protected Materials shall be used by the parties and their counsel solely
        for the purpose of prosecuting or defending the Litigation, and shall not be
3       used for any other purpose, including but not limited to the prosecution or
        defense of any other litigation or claims, unless otherwise agreed to by the
4       party who has designated the materials as protected.

5   June 13, 2003 Stipulated Protective Order at ¶ 5.

6       Accordingly, at the time the parties were drafting the settlement agreement, they

7   would have been operating pursuant to an understanding that the use of the Trust

8   information - at least at that time – was limited in purpose.  The absence of any language in

9   the settlement agreement altering the status quo, combined with the surrounding

10  circumstances, further suggests that the parties intended that any Trust information that

11  Hartford obtained through the audit could not be used for purposes unrelated to the Trust.

12      **4.    Expert Opinions/ Existence of Genuine Issues of Material Fact**

13      Hartford also argues that to the extent the trust fiduciaries' extrinsic evidence may be

14  considered probative, the bankruptcy court improperly made factual findings as to disputed

15  material issues, including the credibility of the experts and the persuasiveness of the

16  proffered expert opinions.  Specifically, Hartford asserts that: (1) the plain language of the

17  agreement; (2) its expert, Ceppi's opinion; and (3) the trust fiduciaries' expert, Guy's

18  opinion, created disputed issues of fact.  *See* Opening Br. at 17-20; Reply at 6-8.

19      Hartford asserts three categories of factual disputes that it contends are raised by

20  the above three sources.  They include alleged disputes as to: (1) limitations on Hartford's

21  use of the Trust information; (2) Hartford's duty of confidentiality with respect to the Trust

22  information; and (3) Hartford's ability to retain copies of the Trust information that it receives

23  pursuant to any audit/review.  At the outset, the court notes that it has *not* provided the

24  parties' arguments with respect to, or addressed, the latter two categories in this section.

25  Instead, the court has considered any issues related to privacy and confidentiality in a

26  separate section below.  Additionally, because the court finds that Hartford's ability to retain

27  copies of Trust information is not associated with the declaratory relief granted to the trust

28

41

United States District Court

For the Northern District of California

fiduciaries in conjunction with their summary judgment motion, but instead concerns the *conditions of the permanent injunction* granted by the bankruptcy court, the court has included that issue below with its discussion of the permanent injunction.  Accordingly, the only alleged factual dispute addressed in this section concerns the limitations on Hartford's use of the Trust information.

Regarding the plain language of the agreement, Hartford essentially reiterates its arguments above that the only limitations on its use of the Trust information were those contained in the agreement itself.  As for its expert Ceppi's testimony, Hartford contends that summary judgment standards required the bankruptcy court to *credit* Ceppi's testimony wherever it contradicted Guy's testimony.  *Id.*  Hartford does not argue that Ceppi specifically stated that its audit/review of Trust information should be unlimited in purpose. Instead, with respect to limitations on its use of the Trust information, Hartford simply notes that "Mr. Ceppi explained that when an insurer conducts an audit there are a 'wide range of legitimate motivations' for that audit, ranging from 'obtaining information regarding claimants that may seek to recover damages from other parties' to 'suggest[ing] improvements to ensure that claims are evaluated properly.'" Opening Br. at 19; Ceppi Decl. at ¶ 6.  It asserts that the bankruptcy court should have construed this testimony to raise a factual issue as to the limitations on use asserted by the trust fiduciaries.

In response, the trust fiduciaries contend that Hartford cannot now, for the first time on appeal, argue that a disputed issue of material fact exists when it failed to raise the dispute before the bankruptcy court below.  *Komatsu v. States Steamship Co.*, 674 F.2d 806, 812 (9th Cir. 1982); *International Union of Bricklayers v. Jaska*, 752 F.2d 1401, 1405-06 (9th Cir. 1985).  They note that Hartford repeatedly argued to the bankruptcy court that there were no disputed issues of fact and that the court should interpret the contract as a matter of law.  *See, e.g.,* March 31, 2008 Transcripts at 43.  The trust fiduciaries thus contend that the court should decline to consider Hartford's argument that a genuine issue of material fact exists so as to preclude summary judgment.

United States District Court

For the Northern District of California

1    Alternatively, even if Hartford is permitted to raise the argument now, the trust

2    fiduciaries argue that it nevertheless has not presented evidence sufficient to establish a

3    genuine issue of material fact.  Oppos. at 7-10.  They first argue that the contractual

4    language and Hartford's proffered dictionary definitions were insufficient to create an issue

5    of disputed fact.  They contend that the dictionary definitions proffered by Hartford are

6    actually in accordance with their expert, Guy's opinion.  Oppos. at 9.

7    The trust fiduciaries further counter that Hartford's expert's declaration also did not

8    create a triable issue, and argue that Ceppi did not disagree with the trust fiduciary's

9    expert, Guy's opinion that an auditor is not permitted to use audit documents for his or her

10    own purposes.  In support, they note the bankruptcy court's finding that "[n]owhere in

11    Ceppi's declaration does he expressly state that, in his opinion, an auditor would be free to

12    use information obtained during an audit for purposes unrelated to the audit without the

13    consent of the entity being audited." Order at 15.

14    The trust fiduciaries deny that the bankruptcy court weighed the expert declarations

15    and made credibility findings regarding the experts.  They characterize the bankruptcy

16    court's statement regarding Ceppi as an observation that, like Hartford, its own expert

17    similarly failed to provide any evidence to support Hartford's argument that the agreement

18    allowed it to use and disseminate Trust materials for any purpose it chose.  Additionally, the

19    trust fiduciaries also note that they objected to Ceppi's testimony before the bankruptcy

20    court not only on the basis that he was biased by reason of his regular retention by

21    Hartford, but also under Federal Rule of Evidence 702.  They argued essentially that

22    because Ceppi's experience was in the field of insurance audits, and that because the

23    parties agreed in the settlement agreement that the agreement was "not an insurance

24    contract," Ceppi's opinions were irrelevant and he failed to qualify as an expert.

25    In reply, Hartford argues that even if the extrinsic evidence in this case pointed to a

26    meaning to which the agreement was susceptible, there was still a factual issue regarding

27    the parties' intent.  It contends that the bankruptcy court's resolution of factual issues and

28

43

United States District Court

For the Northern District of California

1   credibility determinations on summary judgment was inappropriate.  It further argues that

2   the bankruptcy court did not view the evidence in a light most favorable to Hartford; nor did

3   it draw inferences in favor of Hartford or strictly construe the evidence in its favor.

4   In a footnote, Hartford also argues that it did not waive its right to assert a factual

5   dispute.  Reply at 6 n.2.  It concedes that it "first argued" before the bankruptcy court that it

6   was entitled to judgment as a matter of law.  However, it implies that by offering expert

7   testimony from Ceppi in opposition to the trust fiduciaries' summary judgment motion, it

8   was "establishing a genuine issue of material fact regarding contractual intent." *Id.*

9   It further asserts that Ceppi's declaration created a genuine issue of material fact.  It

10   argues that the bankruptcy court erred when it questioned Ceppi's persuasiveness.  It

11   notes that Ceppi's declaration spoke directly to any specialized meaning that the terms

12   possessed in the context of this case.  It also notes that Ceppi is an expert in conducting

13   reinsurance audits.

14   Hartford also contends that the bankruptcy court erred in crediting Guy's testimony.

15   It contends that none of the parties to the agreement were accountants, and that there is no

16   evidence that the terms "review and/or audit" should be interpreted according to accounting

17   principles.  Therefore, it argues that Guy's opinions were irrelevant, and that Ceppi's

18   testimony was the only relevant testimony on the issue, given his experience in the

19   insurance field.

20   *Analysis*

21   The trust fiduciaries are correct that Hartford never argued before the bankruptcy

22   court that a genuine issue of material fact existed that prevented the court from granting

23   summary judgment.  Instead, as noted, Hartford repeatedly argued that the extrinsic

24   evidence submitted by the trust fiduciaries, including Guy's declaration, was irrelevant and

25   also that the bankruptcy court was prevented from considering it.  *See* Hartford's March 17,

26   2008 Brief in Oppos. to Pl. Mot. for Summary Judgment at 1 ("The Trust Parties necessarily

27   contend in their cross-motion that there are no disputed issues of material fact, and that the

28

44

Court can enter judgment as a matter of law.  Hartford agrees."); *id.* at 2 ("the Trust Parties proposed 'evidence' is entirely insufficient to create an issue of fact - much less carry the burden of dispelling any dispute"); *id.* at 6 ("Hartford agrees with the first premise of the Trust Parties' motion that 'there is no dispute as to a genuine issue of material fact with respect to the contract interpretation of Section 14.1.'").  As noted above, other than Ceppi's declaration, Hartford chose not to submit any of its own extrinsic evidence to refute the trust fiduciaries' evidence, and further chose not to argue that a disputed issue of material fact prevented the court from ruling on the motion as a matter of law.

The Ninth Circuit has held that "an appellant may not overturn a summary judgment by raising an issue of fact on appeal that was not plainly disclosed as a genuine issue in the trial court" unless it is "necessary to prevent manifest injustice." *Komatsu*, 674 F.2d at 812; *Kline v. Johns-Manville*, 745 F.2d 1217, 1221 (9th Cir. 1984) (refusing to consider parties' argument "that there [was] a material factual dispute that rendered summary judgment improper" where party failed to raise the issue below in the district court).  Here, based on the above Ninth Circuit cases, on appeal, this court similarly will not consider issues not raised by Hartford below.  Unlike in its briefs on this appeal, Hartford did not point to a single triable issue of fact in its opposition brief or in its oral arguments before the bankruptcy court.

Hartford's mere presentation of Ceppi's declaration to the bankruptcy court without any explication does not somehow magically transform the nature of the arguments that it made before the court below, particularly given that Hartford explicitly clarified that it was *not* presenting Ceppi's declaration to demonstrate a disputed issue of material fact, but instead was presenting the declaration to show that an insurance claim review-type audit was appropriate - as opposed to the financial-type audit described by Guy.  *See* Hartford's March 17, 2008 Brief in Oppos. to Pl. Mot. for Summary Judgment at 11.  However, even if this court were to construe Hartford's submission of the Ceppi declaration as having sufficiently raised a claim that there was a genuine issue of material fact, the court

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  nevertheless concludes that the bankruptcy court did not err in its resolution of the related

2  issues.

3       An expert is not permitted to offer a legal opinion on the meaning of a contract.   *See*

4  *Morrow v. Los Angeles Unified School Dist.* 149 Cal. App. 4th 1424, 1444-45 (Cal. Ct. App.

5  2007); *Cooper Companies v. Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094, 1100 (Cal.

6  Ct. App. 1995).  Although an expert may testify to industry custom and usage with respect

7  to particular contractual terms, it is not appropriate for the expert to opine on the ultimate

8  contract interpretation issue.  *Id.; see also Balfour, Guthrie & Company, Ltd. v. Gourmet*

9  *Farms,* 108 Cal. App. 3d 181, 190 (Cal. Ct. App. 1980).

10      Here, the bankruptcy court employed the expert testimony for a proper purpose, and

11  did not rely on expert opinion for the ultimate interpretation issue.  It simply found that the

12  trust fiduciaries' expert was more persuasive than Hartford's on *one* issue: whether the

13  industry usage of the terms "audit and/or review" generally allowed for the information

14  obtained during the course of the audit to be used for purposes other than those related to

15  the audit.  Hartford Appx., Exh. 4. at 15.  Because Hartford's expert *failed* to offer a

16  competing opinion on the issue, the bankruptcy court's finding was reasonable.  In other

17  words, this was not a case where the bankruptcy court improperly weighed competing

18  expert opinions on the issue; instead, it was a case in which the bankruptcy court simply

19  found that one of the experts failed to offer a competing opinion creating a triable issue of

20  fact.   Moreover, the court notes that the bankruptcy court does not appear to have relied *at*

21  *all* on the expert opinions in its resolution of the issues for which there were indeed

22  competing opinions:  the duty of confidentiality or Hartford's retention of Trust information,

23  discussed below.

24      Because of the deficiency in Ceppi's declaration, his opinion was "not of sufficient

25  quantum or quality to create [a] genuine issue[] of material fact," and the bankruptcy court

26  did not err, much less abuse its discretion, in its interpretation of Ceppi's declaration or in

27  ruling that it was less persuasive than Guy's for this reason.  *Triton Energy Corp.*, 68 F.3d

28

United States District Court

For the Northern District of California

at 1222 (concluding that plaintiff's expert's opinion did not create a genuine issue of material fact based on expert's failure to conduct sufficient inspection of device at issue). Moreover, the court further concludes that the bankruptcy court did not abuse its discretion in implicitly determining that Guy qualified as an expert and that his opinion regarding financial audits was helpful under Federal Rule of Evidence 702. *See Domingo,* 289 F.3d at 605 (evidentiary rulings made in the context of summary judgment are reviewed for an abuse of discretion).

Finally, Hartford's argument that the plain meaning of the agreement created a genuine issue of material fact has already been rejected above given that this court has concluded that the bankruptcy court was permitted to consider the extrinsic evidence, and that the undisputed extrinsic evidence pertaining to the settlement negotiations established that the parties intended that any Trust information that Hartford obtained through the audit could not be used for purposes unrelated to the Trust.

### 5.   Confidentiality

Hartford reiterates many of the same arguments that it made before the bankruptcy court regarding the confidentiality of the Trust materials, and contends that: (1) the majority of the materials are not confidential; (2) the Trust claimants waived confidentiality under California law; and (3) it agreed to adequate measures to protect confidential materials.

First, Hartford argues that the bankruptcy court ignored the fact that most of the information the Trust claimants provided was routine information, such as work history, smoking history, claimed economic loss, and other exposure information.  Second, Hartford contends that under California law, claimants waived any confidentiality concerns by putting their medical status at issue. *See Volkswagen*, 139 Cal. App. 4th at 1481.  It argues that the bankruptcy court's distinction of the *Volkswagen* case is unpersuasive.

Hartford also contends that claim submissions to the Trust are not confidential because the Trust itself has a quasi-public nature.  It argues that trusts like the one here have a duty to compensate only valid claim holders, and that courts should not allow

**United States District Court**

For the Northern District of California

claimants to shield certain potentially fraudulent statements. Hartford cites to a case involving one of Brayton's clients, from an Ohio state court, in which Brayton acknowledged that his client, an asbestos claimant, overstated his exposure and submitted inconsistent submissions to several asbestos trusts. Finally, Hartford argues that its assurance that it would maintain the confidentiality of claimants' social security numbers, information regarding minor children, and non-asbestos-related medical information was more than sufficient to alleviate any privacy concerns.

In response, the trust fiduciaries dispute that the Trust claims are not actually confidential. They note that the Trust beneficiaries are required to submit extensive medial information, financial information, and also personal identifying information regarding themselves, their dependants, and their beneficiaries. They argue that the fact that some of the information is "routine" and publicly available does not destroy the privacy interests of the claimants with respect to the confidential information. The trust fiduciaries note some examples of confidential information, including the fact that a claimant used methadone and wore diapers, a claimant's discussion of the last days of his wife's life, and a claimant's discussion of marijuana and other drug use, among others.

The trust fiduciaries argue that the Trust claimants possess a right to privacy in their confidential information. Although they acknowledge that the Trust is a Nevada trust subject to Nevada law, they assert that many of the beneficiaries are California residents with rights under California law. Accordingly, the trust fiduciaries have addressed the issues primarily under California law in arguing that the Trust claimants have a right to privacy. *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656 (Cal. 1975); *Board of Medical Quality Assurance v. Gherardini*, 93 Cal. App. 3d 669, 678 (Cal. Ct. App. 1979).

The trust fiduciaries argue that the claimants have *not* waived their confidentiality rights simply by submitting Trust claims. They argue that the *Volkswagen* case relied on by Hartford simply stands for the proposition that a defendant in a lawsuit is entitled to discovery regarding a plaintiff's medical conditions that are at issue in litigation. They

United States District Court

For the Northern District of California

1   assert that if indeed Hartford is actually a party to litigation in which the Trust claimants

2   have put their medical condition at issue, then it can seek discovery of the type allowed in

3   *Volkswagen*.  They contend that Hartford's justification for the confidential information here

4   – that a Trust claimant *may have* presented conflicting information in connection with

5   another case or trust - is insufficient to overcome the claimants' confidentiality rights.

6          Additionally, the trust fiduciaries note that the Trust claimants were not themselves

7   parties to the settlement agreement, and thus imply that the claimants could not have

8   waived their confidentiality rights in the negotiation process.  Instead, the trust fiduciaries

9   assert that the agreement was made by the parties to the bankruptcy case and the state

10  court coverage litigation, and that the scope of the negotiations concerned only resolution

11  of disputes in those cases - not necessarily the claimants' confidentiality rights.

12         In its joinder brief, the Trust contends that at the time the parties entered into the

13  settlement agreement, they necessarily understood that some of the claimant information

14  was of a confidential nature since they were already litigating under a protective order that

15  prohibited the dissemination of existing claimant information.  The Trust argues that there

16  were no successive events that changed the nature of the claimant information; nor are

17  there any provisions in the settlement agreement that may be interpreted to waive the

18  claimants' privacy rights.

19         The Trust further notes that since it came into creation, it has always treated the

20  claimant information as confidential, and that it has a third-party disclosure policy by which

21  it notifies a claimant of a request for claimant information, and provides the claimant with

22  the opportunity to object to disclosure.  Decl. of Sara Beth Brown, ¶¶ 11-14.  It also states

23  that it recognizes Hartford's legitimate audit rights, but that those rights are limited by the

24  claimants' privacy concerns.  The Trust further notes that it worked diligently to fashion a

25  solution that would balance Hartford's audit rights with its claimants' privacy rights, but that

26  its efforts were unsuccessful.  It asserts that after it informed the trust fiduciaries of

27  Hartford's demand, the subsequent litigation resulted.  It contends that the resulting

28

litigation has been time-consuming and very expensive, and has ultimately "taxed the resources available to this limited fund that exists to compensate - only in part, unfortunately - injured claimants." The Trust asserts that the bankruptcy court's decisions and injunction are in large part consistent with the very offers the Trust made Hartford prior to the litigation, and states that the injunction strikes the appropriate balance between recognizing Hartford's audit rights and the continued confidentiality of claimants' information.

The Trust further adds that the claimants' expectations of privacy in the Trust process must be greater than those that would exist in the context of litigation. It notes that the Trust is not an adversary to the claimants, but is an entity established by the bankruptcy court to fairly resolve their claims against the debtors. Moreover, the Trust further disputes the notion that Trust claimants waived their confidentiality rights because they had actual or constructive notice of the settlement agreement. It asserts that it is unreasonable to assume, based on the language of the audit provision, that a claimant who read the settlement agreement would understand that s/he was relinquishing their privacy rights.

In reply, Hartford argues that the trust fiduciaries' attempt to distinguish the California court's decision in *Volkswagen* is unpersuasive. 139 Cal. App. 4th at 1494. It argues that the court's decision in that case, that similar information was not confidential or private, was *not* predicated on the procedural posture of the case, as assumed by the trust fiduciaries and the bankruptcy court. Instead, it argues that the *Volkswagen* court determined that such submissions were not confidential because they had been submitted to support a demand for payment on a claim. *Id.* Hartford argues that the same is the case here with the Trust claimants.

Hartford also implies that confidential Trust information should be segregated and treated differently than non-confidential Trust information. It concedes that there is a

United States District Court

For the Northern District of California

dispute that certain information is private,[14] and implies that it should be able to freely use and disclose other non-confidential information.  Hartford further contends that the cases relied on by the Trust and trust fiduciaries in support of their argument that the claimants' medical records are confidential are distinguishable because they concern privileged communications made exclusively between a doctor and patient, as opposed to the claim forms here that were submitted to a third party.

Hartford additionally disputes the trust fiduciaries' assertion that the Trust claimants were not parties to the settlement agreement.  It asserts that the settlement agreement was negotiated in part by the official committee of unsecured creditors, a committee that it claims was composed entirely of Trust claimants, including the asbestos plaintiffs' firms that represented the claimants and the court-appointed representative of future claimants.

*Analysis*

Although Hartford hasn't recognized this fact, the confidentiality issue is actually relevant both to the bankruptcy court's granting of summary judgment *and* its granting of permanent injunctive relief to the trust fiduciaries.  As noted above, one of the trust fiduciaries' declaratory relief claims on which the bankruptcy court granted summary judgment included a request that the bankruptcy court declare that:

> the personal and medical information required by the [Chapter 11 plan] Confirmation Order to be submitted to the Trust by individuals who have personal injury or wrongful death actions seeking damages allegedly caused by the presence of, or exposure to, asbestos or asbestos containing products used, furnished or sold by Debtors in order to obtain an offer of settlement from the Trust is information that warrants privacy protection and may not be publicly disclosed.

In its April 11, 2008 order, the bankruptcy court granted declaratory relief on that claim and made certain rulings regarding the confidentiality of the Trust information as described above.  This court reviews those rulings pursuant to the standards of review associated with summary judgment motions.

---

[14]The only information for which Hartford contends there is a dispute as to confidentiality pertains to sections 4-8 of the Trust claim forms.  Hartford's Reply to Trust's Joinder Br., at 3.

United States District Court

For the Northern District of California

1    Given the trust fiduciaries' success on the declaratory relief claims, the bankruptcy

2  court also found that the trust fiduciaries were entitled to permanent injunctive relief.  In

3  conjunction with the August 11, 2008 permanent injunction issued, the bankruptcy court set

4  forth certain requirements for maintaining the confidentiality of the Trust information.

5  However, many of the confidentiality rulings are intertwined with those made on summary

6  judgment, making it difficult for the court to classify them as *either* summary judgment

7  rulings *or* as conditions of the permanent injunction.  Accordingly, the court has reviewed

8  those rulings under the standard of review associated with summary judgment rulings since

9  that standard is more favorable to the losing party, Hartford.

10    Additionally, this court notes that in spite of the fact that the Trust document itself

11  specifies that Nevada law governs the Trust agreement, the parties (including the Trust)

12  and the bankruptcy court addressed the issue as one of California law.  In their opening

13  motion papers before the bankruptcy court, the trust fiduciaries noted that the "vast majority

14  of [Trust] claims" were from California residents.  Brayton Decl. ¶ 6.  Therefore, the trust

15  fiduciaries asserted that "the California beneficiaries have rights under California law."  In

16  opposition, Hartford did not object to the application of California law, and in fact implicitly

17  conceded that application of California law was appropriate, arguing itself that the claim

18  information was public under California law.  March 17, 2008 Oppos. at 18.  In its brief on

19  intervention, like the trust fiduciaries, the Trust acknowledged that its "beneficiaries are

20  from multiple states," and that "California claimants . . . have rights under California law."

21  March 17, 2008 Brief at 5.[15]

22    The bankruptcy court ultimately relied on California law in holding that most of the

23  information submitted by the Trust claimants is confidential.  April 11, 2008 Order at 17.  It

24  did not, however, address the fact that some of the Trust claimants are not California

25  residents, even though its ruling applied to *all* Trust claimants.  Although this court

26  ─────────────────

27    [15]The Trust also noted that Nevada statutory law supports the proposition that Nevada beneficiaries possess similar rights as those of California residents.  *Id.*

28

United States District Court

For the Northern District of California

1  questions whether California law should have been applied to ascertain the privacy rights of

2  non-California Trust claimants, it notes that Hartford has *not* assigned error to the

3  bankruptcy court's ruling on this basis, and even continues itself to rely on California law on

4  appeal in support of its arguments that the information is public and that the Trust claimants

5  waived confidentiality.  Accordingly, on appeal, the court has similarly reviewed the issue in

6  accordance with California privacy law.

7        The court additionally notes that in conjunction with the confidentiality issue, as

8  discussed above, one of the challenges that Hartford makes to the bankruptcy court's

9  confidentiality ruling pertains to its treatment of the expert opinions.  Hartford argues that its

10  expert Ceppi's declaration, when compared to Guy's declaration, created a triable issue of

11  fact, and asserts that Ceppi's opinion that Hartford did not possess "a duty of confidentiality

12  to the Trust," Ceppi Decl. at ¶ 11, should have been interpreted by the bankruptcy court as

13  testimony that Hartford could use the audit materials publicly and was not required to keep

14  them confidential.  Reply at 7.  However, as noted above, the bankruptcy court did not

15  make a *credibility* determination regarding its expert, Ceppi, and did not rely *at all* on the

16  expert opinions in its resolution of the confidentiality issue.  Thus, there is no merit to

17  Hartford's argument that somehow the bankruptcy court erroneously accepted the opinion

18  of the trust fiduciaries' expert over that of its expert on the confidentiality issue.

19        Turning now to the confidentiality of the Trust information under California law, the

20  California Supreme Court has recognized that the right of privacy protects an individual's

21  reasonable expectation of privacy against a serious invasion.  *Pioneer Electronics (USA),*

22  *Inc. v. Superior Court*, 40 Cal. 4th 360, 370-71 (Cal. 2007).  Whether a legally recognized

23  privacy interest exists is a question of law, and whether the circumstances give rise to a

24  reasonable expectation of privacy and a serious invasion thereof are mixed questions of

25  law and fact.  *Id.*  "If the undisputed material facts show no reasonable expectation of

26  privacy or an insubstantial impact on privacy interests, the question of invasion may be

27  adjudicated as a matter of law."  *Id.*

28

**United States District Court**
For the Northern District of California

1    Reiterating its holding in *Hill v. National Collegiate Athletic Assn.*, the California

2  Supreme Court in *Pioneer Electronics* described the analytical framework for assessing

3  claims of invasion of privacy under California's Constitution. *Id.* (citing 7 Cal. 4th 1, 35 (Cal.

4  1994)).   As a starting point, the claimant must possess a  "legally protected privacy

5  interest."  *Id.*  Next, the claimant must have a reasonable expectation of privacy under the

6  particular circumstances, including the customs, practices, and physical settings

7  surrounding particular activities.  *Id.*  Third, the invasion of privacy must be serious in

8  nature, scope, and actual or potential impact; trivial invasions do not create a cause of

9  action.  *Id.*  If a claimant meets these criteria, then the court must balance the privacy

10  interest at stake against other competing or countervailing interests.  *Id.*

11    First, this court has reviewed the exhibits containing examples of claimant

12  information submitted to the Trust, including those submitted under seal, and concludes

13  that the Trust claimants indeed possess a legally protected privacy interest in their claim

14  information, which in large part includes medical records, financial details, and other

15  information of a highly personal nature.  *See Valley Bank*, 15 Cal. 3d at 657 (concluding

16  that the state's privacy provision "extends to one's confidential financial affairs as well as to

17  the details of one's personal life"); *Board of Medical Quality Assurance*, 93 Cal. App. 3d at

18  678 ("[a] person's medical profile is an area of privacy infinitely more intimate, more

19  personal in quality and nature than many areas already judicially recognized and

20  protected"); *Hill*, 7 Cal.4th at 35 (individuals have a privacy interest in their intimate

21  personal decisions).

22    Hartford has provided the court with no authority in support of its argument that the

23  Trust itself is quasi-public; and that even if it is, that would somehow undermine the

24  confidentiality of the information submitted by plaintiffs.  Nor has Hartford provided the court

25  with any authority for the proposition that the inclusion of nonconfidential information - in

26  addition to the confidential information -- in the claimant submissions undermines the

27  confidential nature of the submissions generally.   In a FOIA case involving an individual's

28

privacy interest in his rap sheet, which contained both private and public information, the

United States Supreme Court recognized that the fact that "an event is not wholly 'private'

does not mean that an individual has no interest in limiting disclosure or dissemination of

the information." *See United States Dep't of Justice v. Reporters Comm. for Freedom of

the Press*, 489 U.S. 749, 770 (1989).

Second, the fact that the claimants voluntarily submitted their medical information to

the Trust does not undermine their reasonable expectation of privacy under the particular

circumstances of the case.  The case relied on by Hartford, *Volkswagen*, is distinguishable.

In *Volkswagen*, the California Court of Appeal considered whether claim documents

submitted to bankruptcy trusts to obtain compensation for asbestos-related injuries were

discoverable in subsequent litigation that the claimant brought in state court for the same

injuries.  139 Cal. App. 4th at 1485.  The *Volkswagen* court held that "most such

documents normally are," and it issued a writ of mandate to correct the trial court's "overly

restrictive" discovery order which excluded claims submitted by the plaintiff's attorneys.  *Id.*

The court concluded that it would be an unjustifiable denial of discovery for the trial court to

refuse to allow defendants to discover documents submitted to bankruptcy trusts by the

plaintiff's attorneys in support of the plaintiff's claims to those trusts for compensation for

the alleged asbestos-related injuries.  *Id.* at 1490-92.  It concluded that the state trial court

erred when it denied such a discovery request because it found that the document would

not be admissible at trial based in part on privacy concerns.  *Id.*

The *Volkswagen* court held that discoverability did not turn on the admissibility of the

evidence.  *Id.*  Nevertheless, it noted that "although admissibility is not a prerequisite to

discoverability, a heightened standard of discovery may be justified when dealing with

information which, though not privileged, is sensitive or confidential."  *Id.* at 1492.  It further

noted that the cases that "have approved a heightened standard [of discovery]" were

"concerned primarily with protecting particularly sensitive matters, such as sexual or

psychiatric histories, *or the privacy interests of third parties.*"  *Id.* (emphasis added).  It

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    concluded that such a heightened standard was not warranted in the case, though,

2    because "what is at issue here is information bearing on the very injury for which [the

3    asbestos trust claimant] is suing Volkswagen.  No third party interest is at stake."  *Id.*

4         Contrary to Hartford's arguments otherwise, the current proceedings are

5    procedurally very different from those in *Volkswagen,* and the California appellate court's

6    decision in *Volkswagen* hinged in large part on those differences.  The Trust claimants here

7    *are not suing* Hartford, at least not in the context of the main bankruptcy case or these

8    adversary proceedings.  Nor are they demanding payment from Hartford; instead they are

9    simply utilizing the mechanism set up in the debtors' chapter 11 bankruptcy case for

10   submitting their claims.  Accordingly, the bankruptcy court did not err in finding that the

11   information sought by Hartford "has no bearing on a claim of damages being asserted

12   against it, either directly or as the insurer of a third party."

13        Moreover, in the event that a particular Trust claimant does sue Hartford in another

14   forum, then, as recognized by the bankruptcy court, to the extent permitted by law, Hartford

15   can obtain discovery regarding that particular claimant's Trust submissions in the course of

16   *that case.*  This case also differs from *Volkswagen* in so far as Hartford is *not* seeking

17   discovery here.  Instead, it is seeking an interpretation of its audit rights.

18        Third, the court concludes that the potential invasion of privacy here is serious in

19   nature, scope, and actual or potential impact.  Hartford not only seeks *access* to the

20   confidential information of the Trust claimants, but it also seeks a non-confidential

21   designation enabling it to disclose the claimants' information to other third parties as it

22   chooses.

23        Having concluded that the Trust information satisfies the first three requirements, the

24   court thus turns to the requisite balancing of interests.  As noted above, it does not find this

25   case comparable to *Volkswagen.*  Instead, the court finds this case to be more akin to other

26   California cases involving requests for information regarding the private information of

27   *nonparties.*  Typically, in cases involving the confidential information of nonparties, the

28

United States District Court

For the Northern District of California

1   nonparties must be provided with notice and an opportunity to object to disclosure of their

2   private information.  *See Valley Bank*, 15 Cal. 3d at 658; *Colonial Life & Acc. Ins. Co. v.*

3   *Superior Court*, 31 Cal. 3d 785, 794-95 (Cal. 1982); *Alch v. Superior Court*, 165 Cal. App.

4   4th 1412, 1427 (Cal. Ct. App. 2008); *Pioneer Elect.,* 40 Cal. 4th at 370.

5          Here, noting that the trust fiduciaries were willing to give Hartford access to the Trust

6   claimants' confidential information pursuant to a protective order during the "active phase of

7   the bankruptcy cases," the bankruptcy court construed Hartford's "audit and/or review"

8   rights to allow it access to the confidential Trust claimant information in the course of its

9   audit.  In other words, the bankruptcy court did not curtail Hartford's access to the

10  confidential information - or even rule that the Trust claimants were entitled to notice and an

11  opportunity to object prior to *Hartford's* access to the information.  Thus, it treated Hartford

12  more favorably than the California courts have treated parties requesting confidential

13  information from nonparties in other cases.

14         After balancing Hartford's interests with the privacy interests of the Trust claimants,

15  the bankruptcy court simply restricted Hartford's ability to further disclose the confidential

16  information to third parties *other than its reinsurers.*  Given the claimants' privacy rights

17  under California law, this court agrees that, at a minimum, such a restriction was required,

18  and was justified by a balancing of the competing interests.  Moreover, Hartford's

19  unilaterally proposed "protections" were not sufficient under the circumstances.

20         For these reasons, the trust fiduciaries were entitled to summary judgment on this

21  claim for declaratory relief.

22         **6.     Permanent Injunction**

23                **a.     Injunctive Relief Generally**

24         Hartford argues that the record does not support the permanent injunctive relief

25  granted by the bankruptcy court.  Specifically, Hartford argues that the trust fiduciaries

26  failed to show sufficient irreparable harm.  It contends that the trust fiduciaries did not

27  demonstrate a specific, identifiable injury to their privacy rights.

28

United States District Court

For the Northern District of California

1    The trust fiduciaries counter that the bankruptcy court correctly concluded that they

2   had demonstrated a sufficient likelihood of irreparable harm to the Trust claimants'

3   confidentiality rights that could not be remedied through damages.  They contend that the

4   entire dispute sprang from Hartford's refusal to recognize the confidential nature of the

5   Trust information, and that it was therefore appropriate for the bankruptcy court to grant

6   injunctive relief.

7                    *Analysis*

8    This court concludes that the bankruptcy court did not abuse its discretion in

9   granting permanent injunctive relief because, for all of the reasons discussed above with

10   respect to summary judgment, Hartford's threatened disclosure of the Trust claimants'

11   confidential information was not permitted by the settlement agreement or under California

12   law, and would have resulted in irreparable harm for which monetary damages would be

13   inadequate.  *See Nelson v. National Aeronautics and Space Admin.*, 530 F.3d 865, 882

14   (9th Cir. 2008) (concluding that where employees raised serious constitutional concerns

15   based on their right to informational privacy, such violations could not be adequately

16   remedied through damages); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir.

17   1997).

18          **b.    Conditions of Permanent Injunction**

19    Hartford also argues that the bankruptcy court erred in imposing one of the

20   conditions of the permanent injunction.  Specifically, Hartford challenges the condition in

21   the August 11, 2008 permanent injunction that:

22          Except as provided in paragraph 8(d) below, no later than six months after (d)
           Hartford's receipt of Audit Materials, those materials shall be returned to the
23          Trust or destroyed and Hartford shall certify by affidavit to the Trust that all
           copies of the Audit Materials in Hartford's possession, custody, or control
24          have been destroyed, provided however that Hartford may advise the Trust
           that it wishes to retain a limited number of documents or excerpts from them
25          to memorialize or summarize the audit and review conclusions, in which case
           the Trust and Hartford will seek to reach agreement on such retention and
26          may bring any dispute to the Court.

27    Hartford contends that the bankruptcy court erred in requiring it to return Trust

28

                                    58

United States District Court

For the Northern District of California

1   materials within six months of its receipt of the materials.  It notes that there was no

2   evidence that the parties contemplated such a condition, and suggests that the time frame

3   is not feasible.  Hartford further contends that the trust fiduciaries did not even request this

4   restriction, but the bankruptcy court simply added it *sua sponte*.

5          In opposition, the trust fiduciaries argue that the six-month restriction imposed by the

6   bankruptcy court in the permanent injunction is reasonable.  They imply that the six months

7   afforded Hartford to study and review the Trust documents is sufficient, and note that the

8   order even allowed for exceptions to the time period.  They argue that neither the

9   agreement nor the extrinsic evidence allow for indefinite audits.

10         In reply, Hartford argues that the because the bankruptcy court *sua sponte* imposed

11  the six-month restriction, it was denied an opportunity to brief the issue.  Moreover, Hartford

12  suggests that the evidence and expert opinions actually demonstrate that it should be

13  allowed to retain indefinitely some of the Trust materials that it reviews.

14                                              *Analysis*

15         Although Hartford frames this as a summary judgment issue in its opening brief, it is

16  more appropriately viewed as a condition of the injunction, which is reviewed for an abuse

17  of discretion.  Accordingly, its related argument that there was a genuine issue of material

18  fact created by the expert declarations on the issue of the retention of documents is without

19  merit because this was *not* a summary judgment issue.  Moreover, there is no indication in

20  the record that the bankruptcy court even relied on the pertinent portions of the expert

21  declarations in fashioning the scope and conditions of the injunction.  However, if it had, it

22  was entitled to do so.

23         Given this court's analysis of the summary judgment issues, and particularly its

24  conclusions that the bankruptcy court did not err in concluding that the Trust information

25  was confidential and that the settlement agreement limited Hartford's use of the

26  information, the court finds that the challenged condition limiting Hartford's retention of the

27  Trust information was reasonable.  The bankruptcy court afforded Hartford reasonable

28

United States District Court

For the Northern District of California

1   access to the information in order to conduct the audit and/or review permitted by the

2   settlement agreement, while at the same time, recognizing that certain restrictions were

3   appropriate given the confidential nature of the information.

4   **CONCLUSION**

5        For the reasons set forth above, the court AFFIRMS the bankruptcy court's August

6   11, 2008 order in adversary case no. 07-4141 granting appellees' motion for partial

7   summary judgment and for a permanent injunction and denying Hartford's motion for

8   judgment on the pleadings and/or for summary judgment, and also AFFIRMS the

9   bankruptcy court's August 21, 2008 order in the main chapter 11 bankruptcy case, no. 02-

10   46284, denying as moot Hartford's motion to enforce the settlement agreement and

11   appellees' motion for clarification.

12        This order fully adjudicates the consolidated appeals and terminates all pending

13   motions in both cases.  The clerk shall close the files.

14        **IT IS SO ORDERED.**

15   Dated: September 10, 2009

16

17   _____
    PHYLLIS J. HAMILTON
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28